1

                          UNITED STATES DISTRICT COURT

                   FOR THE EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff | : | |
| | : | Criminal Case |
| v. | : | No. 20-CR-00239-TSE |
| | : | |
| ALEXANDA AMON KOTEY, | : | September 2, 2021 |
| | : | |
| Defendant | : | 5:30 p.m. |

...........................   :   .......................

                    TRANSCRIPT OF PLEA HEARING

             BEFORE THE HONORABLE T.S. ELLIS, III

                 UNITED STATES DISTRICT JUDGE

**APPEARANCES:**

FOR THE PLAINTIFF:       DENNIS FITZPATRICK
                               RAJ PAREKH
                                 JOHN T. GIBBS
                                 AIDAN TAFT GRANO-MICKELSEN
                                 ALICIA H. COOK
                                 U.S. ATTORNEY'S OFFICE
                                 2100 Jamieson Avenue
                                 Alexandria, VA  22314
                                 703-299-3700

FOR THE DEFENDANT:      CADENCE MERTZ
                                 BROOKE SEALY RUPERT
                                 OFFICE OF THE
                                 FEDERAL PUBLIC DEFENDER
                                 1650 King Street
                                 Suite 500
                                 Alexandria, VA  22314
                                 703-600-0800

                               BARRY COBURN
                                 MARC JASON EISENSTEIN
                                 COBURN & GREENBAUM, PLLC
                                 1710 Rhode Island Avenue, NW
                                 2nd Floor
                                 Washington, DC  20036
                                 202-470-2695

                               (Appearances continued on next
                               page)

2

```
 1     FOR THE DEFENDANT:              SABRINA PARVIN SHROFF
                                       LAW OFFICES OF SABRINA SHROFF
 2                                     80 Broad Street
                                       19th Floor
 3                                     New York, New York  10004
                                       (646-763-1490
 4

 5     OFFICIAL COURT REPORTER:        REBECCA STONESTREET, RPR, CRR
                                       U.S. District Court, 9th Floor
 6                                     401 Courthouse Square
                                       Alexandria, Virginia  22314
 7                                     (240) 426-7767

 8
                                  ( Pages 1 - 76)
 9

10
             COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2              COURTROOM CLERK:  Court calls criminal case
3    United States of America versus Alexanda Amon Kotey, Case
4    Number 2020-CR-239.  May I have appearances, please, first for
5    the government.
6              MR. FITZPATRICK:  Thank you.  Good afternoon,
7    Your Honor.  Dennis Fitzpatrick, Raj Parekh, John Gibbs, Aidan
8    Grano-Mickelsen, and Alicia Cook on behalf of the
9    United States.
10             THE COURT:  All right.  Good afternoon to you all.  And
11   for the defendant?  Ms. Mertz, you're here for the defendant?
12             MS. MERTZ:  Yes, Your Honor.  Cadence Mertz and
13   Brooke Rupert, Sabrina Shroff, Barry Coburn, and
14   Marc Eisenstein on behalf of Alexanda Kotey, who is present,
15   Your Honor.
16             THE COURT:  Well, good afternoon to all of you.  But
17   Mr. Kotey is seated to your right.  Is that correct?
18             MS. MERTZ:  That's correct, Your Honor.
19             THE COURT:  Good afternoon, Mr. Kotey.
20             THE DEFENDANT:  Good afternoon.
21             THE COURT:  We're gathered for the purpose of
22   considering a plea to all eight counts of the indictment.  Let
23   me begin by asking -- I understand the parties are not in total
24   agreement about whether any part of this proceeding should be
25   under seal.  Are you aware of that, Mr. Fitzpatrick?
```

4

1           MR. FITZPATRICK:  Your Honor, my understanding, we had

2     discussed it prior to --

3           THE COURT:  Who is "we"?

4           MR. FITZPATRICK:  The government, with counsel for

5     Mr. Kotey, Ms. Shroff and Ms. Mertz, in particular.  It was my

6     understanding that we had resolved that issue and that none of

7     today's proceedings would be under seal.  It's the government's

8     desire that this should be a completely public proceeding with

9     nothing under seal.  If the Court is interested in further

10    argument on that, I'm happy to provide it.

11          THE COURT:  All right.  We'll do it on the earphones

12    and the microphone.

13          MS. MERTZ:  Your Honor, if I may.  It might

14    short-circuit that.  We're not opposing holding these

15    proceedings in public.  Counsel for Mr. Kotey would simply note

16    that having these proceedings public is, we believe, a safety

17    concern for Mr. Kotey and his family; however, we are not

18    opposing the government's request to hold the hearing entirely

19    in public.

20          THE COURT:  All right.  Thank you.  That obviates the

21    necessity to pursue this matter any further.  It will continue

22    as a public hearing in all respects.  That includes all

23    provisions of the plea agreement, doesn't it, Mr. Fitzpatrick?

24          MR. FITZPATRICK:  It does, Your Honor.

25          THE COURT:  Ms. Mertz?

1          MS. MERTZ:  That's correct, Your Honor.

2          THE COURT:  All right.  Now, Mr. Fitzpatrick, the

3    government has obligations under the Victims' Rights Act, and I

4    want you to tell the Court in open court here what provisions

5    the government has taken, and if there are victims here, the law

6    gives victims the right to be informed of a plea.  The law gives

7    the right of victims to be present at a plea hearing and to

8    address the Court, but they may not want to.  They also have

9    that right at sentencing and other phases.

10         What is the situation today, Mr. Fitzpatrick?

11         MR. FITZPATRICK:  Your Honor, would you like me to

12   begin by telling you which victims are here?  Would you like me

13   to name them?

14         THE COURT:  Victims' families?

15         MR. FITZPATRICK:  Victims' families, yes.

16         THE COURT:  Yes, I would.

17         MR. FITZPATRICK:  Your Honor, in the first row to the

18   government's left, we have Mr. Art Sotloff.  Next to Mr. Sotloff

19   is -- and he is the father of Steven Sotloff.  Next to

20   Mr. Sotloff is Mr. Carl Mueller, next to him is his wife,

21   Mrs. Marsha Mueller; they are the parents of Kayla Mueller.

22         Stepping back to the next row, at the end we have

23   Mrs. Diane Foley, who is the mother of James Foley, we have

24   Mr. John Foley, who is the brother of James Foley, we have

25   Mr. Michael Foley, who is the brother of James Foley, and then

6

1    we have Mr. John Foley -- or Dr. John Foley, who is the father

2    of James Foley.

3          Stepping back we have Roberta Kassig, who is related to

4    Peter Edward Kassig.  We also have in the row behind that, we

5    have Ms. Paula Kassig and Mr. Ed Kassig, who are the parents of

6    Peter Edward Kassig.

7          Unfortunately, Mrs. Shirley Sotloff couldn't be here

8    today.  She wanted to, but she was unavoidably detained or kept

9    away from today.  But she wanted to be here.

10         THE COURT:  And I want you to be able to represent to

11   the Court that the government has fulfilled -- has satisfied all

12   of its obligations under the Victims' Rights Act.

13         MR. FITZPATRICK:  We have, Your Honor.  We began

14   discussing this with the victims' families approximately

15   two weeks ago.  The substance, where we went through the Plea

16   Agreement and the Statement of Facts paragraph by paragraph took

17   place early this week.  We had a group meeting with all the

18   victim families.  The Kassigs were thankfully able to join by

19   phone.  We explained the entirety of the agreement to them, we

20   answered all of their questions.  Naturally, they can speak for

21   themselves, but the feedback that we have received is that they

22   are in favor of today's proceedings.

23         THE COURT:  All right.  Now, as I see the

24   Victims' Rights Act, Mr. Fitzpatrick, it gives the victims the

25   right to be reasonably heard at any public proceeding in the

1    District involving release, plea, sentencing or any parole

2    proceedings.  Do you know whether any of those individuals that

3    you've introduced want a right to address the Court at this plea

4    hearing?  Now, they'll also have the right at any sentencing,

5    but that's not now.

6              MR. FITZPATRICK:  Your Honor, we've discussed with the

7    victims at length their ability to allocute at sentencing.  No

8    one expressed a desire to speak today.  I can certainly ask that

9    question now.

10             THE COURT:  Well, confirm that for me.  They have that

11   right, and I want to know whether they want to do that now.

12             MR. FITZPATRICK:  We'll do that.

13             THE COURT:  They can do it now and at sentencing, but

14   if what they intend to do is to allocute, if at all, at

15   sentencing, then we can proceed with the plea and get on with

16   it.

17             MR. FITZPATRICK:  I understand, Your Honor.

18             THE COURT:  Who is the Arabic interpreter present here

19   today?

20             THE INTERPRETER:  Good afternoon, Your Honor.  Good

21   afternoon.

22             THE COURT:  Yes, good afternoon.  May I have your full

23   name, please?  Give her a microphone, please.

24             THE INTERPRETER:  Ghada, G-H-A-D-A, Attieh,

25   A-T-T-I-E-H.

8

```
 1              THE COURT:  Yes.  Ms. Attieh, you've served as an
 2    interpreter in English, in Arabic in this courtroom --
 3              THE INTERPRETER:  Yes, Your Honor.
 4              THE COURT:  -- on several occasions.  Am I correct?
 5              THE INTERPRETER:  Yes.
 6              THE COURT:  And I think I ascertained then and I saw
 7    that you were able to translate from English to Arabic and
 8    Arabic to English simultaneously as it is spoken.  Am I correct?
 9              THE INTERPRETER:  Yes, Your Honor.
10              THE COURT:  So I find that you are fully competent and
11    capable as serving as an interpreter in this case.  You may
12    administer the oath to Ms. Attieh.
13              (Oath administered by courtroom deputy clerk.)
14              THE COURT:  Now, we'll find out in a few minutes how
15    much interpretation will be needed.
16              Yes, Mr. Fitzpatrick.  You've now ascertained whether
17    any of the victim families wish to be heard today?
18              MR. FITZPATRICK:  That's correct, Your Honor.  And none
19    of them wish to be heard today, but if we get to a sentencing
20    hearing, you'll hear allocution from them at that time.
21              THE COURT:  All right.  Thank you.  We're gathered for
22    the purpose of hearing whether the Court accepts the plea, if
23    Mr. Kotey determines to go through with the plea agreement.
24              Let's begin -- Mr. Kotey, would you come to the podium,
25    please, sir.  That is here.  Yes, and you may remove the mask
```

9

1    because you'll be behind the screen there.

2              Good afternoon again, Mr. Kotey.

3              THE DEFENDANT:  Good afternoon.

4              THE COURT:  Mr. Kotey, let me first ask you whether you

5    speak and understand English.

6              THE DEFENDANT:  Yes, I speak and understand English

7    perfectly.

8              THE COURT:  Do you have any trouble doing so?

9              THE DEFENDANT:  No.  I'm a fluent English speaker.

10             THE COURT:  So that means you read and write English as

11   well?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  You may administer the oath and

14   he may affirm.  He may affirm.

15             (Oath administered by courtroom deputy clerk.)

16             THE COURT:  Mr. Kotey, as I understand it, you intend

17   to plead guilty to Counts 1 through 8 of the pending indictment.

18   Is that correct?

19             THE DEFENDANT:  That's correct, yeah.

20             THE COURT:  There's one other preliminary matter I

21   omitted to mention.  This matter is also being made available to

22   victims' families not for this indictment, but victims' families

23   in the United Kingdom.  Is that correct?

24             MR. FITZPATRICK:  Yes, Your Honor.  The phone line is

25   open.

1            THE COURT:  All right.  Now, Mr. Kotey, would you tell

2    me your full name, please, sir.

3            THE DEFENDANT:  My name is Alexanda Amon Kotey.

4            THE COURT:  And what is your age?

5            THE DEFENDANT:  37.

6            THE COURT:  Where were you born?

7            THE DEFENDANT:  London, England.

8            THE COURT:  And did you attend school in London?

9            THE DEFENDANT:  Yes.

10           THE COURT:  What is the highest grade in school that

11   you completed?

12           THE DEFENDANT:  What you call in United States high

13   school.

14           THE COURT:  All right.  And did you attend college or

15   university?

16           THE DEFENDANT:  No.

17           THE COURT:  So to repeat, since you completed school in

18   England, I assume you read and write English and speak English

19   fluently?

20           THE DEFENDANT:  Exactly.

21           THE COURT:  Now, we have an Arabic interpreter here, so

22   any question that you think that is asked - and I will be asking

23   a number of questions - if you have difficulty understanding any

24   of those questions and if you want anything translated for you

25   into Arabic, you need only ask for it, and I will require it.

1           THE DEFENDANT:  Yeah, that won't be necessary.

2           THE COURT:  All right.  Now, let me ask also, what jobs

3     have you held in the last five years?  Make it three years to

4     begin with because I don't know where you were in the last

5     five years.

6           THE DEFENDANT:  The last three and five years I was in

7     Syria, so that would be entering into the indictment, I guess.

8           THE COURT:  All right.  So in the last five years you

9     were involved in warfare in Syria.  Is that right?

10          THE DEFENDANT:  That's correct.

11          THE COURT:  Have you ever been employed?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Where?

14          THE DEFENDANT:  In the United Kingdom.

15          THE COURT:  In what capacity?

16          THE DEFENDANT:  I did very brief employment in retail.

17          THE COURT:  And what did you do in retail?

18          THE DEFENDANT:  I worked in a sports shop.

19          THE COURT:  In London?

20          THE DEFENDANT:  In London, yes.

21          THE COURT:  And what was your job?

22          THE DEFENDANT:  It was working on the floor of a sports

23     store, in the Nike department.

24          THE COURT:  You were selling sports products?

25          THE DEFENDANT:  That's right.

```
 1                  THE COURT:  Have you ever been treated for mental

 2       illness or addiction to narcotic drugs of any kind?

 3                  THE DEFENDANT:  No.

 4                  THE COURT:  Have you ever been treated for alcohol

 5       abuse?

 6                  THE DEFENDANT:  No.

 7                  THE COURT:  Are you currently taking any drug or

 8       medication, whether prescribed or otherwise?

 9                  THE DEFENDANT:  No.

10                  THE COURT:  Is there any reason this afternoon,

11       Mr. Kotey, why you would be unable to understand what is

12       happening in this proceeding today?

13                  THE DEFENDANT:  No.

14                  THE COURT:  Do you feel all right this afternoon?

15                  THE DEFENDANT:  Yes.

16                  THE COURT:  Do you feel as though you can make

17       decisions about your future today?

18                  THE DEFENDANT:  Yes.

19                  THE COURT:  Have you been provided with a copy of the

20       indictment; that is, the grand jury's charges against you in

21       this case?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  Have you read it?

24                  THE DEFENDANT:  Yes.

25                  THE COURT:  And have you reviewed it with your counsel,
```

1    Ms. Mertz and Mr. Coburn and maybe others?

2              THE DEFENDANT:  I've read it and we've discussed it

3    thoroughly, yes.

4              THE COURT:  All right.  You say you've read it and

5    discussed it thoroughly with your counsel?

6              THE DEFENDANT:  That's correct, yeah.

7              THE COURT:  Let me ask whether you're fully satisfied

8    and -- are you fully satisfied with the advice and counsel

9    that -- advice that your counsel has provided you?

10             THE DEFENDANT:  Yes, I am.

11             THE COURT:  Let me re-ask that because I clearly

12   confused it.

13             Are you fully satisfied with the advice and counsel

14   you've received from the lawyers that have been appointed for

15   you in this case?

16             THE DEFENDANT:  Yes, I am.

17             THE COURT:  All right.  There are eight counts in the

18   indictment, and I'm going to review with you each of the eight

19   counts and the maximum punishments that may result from your

20   pleading guilty to those eight counts.

21             Count 1, Mr. Kotey, charges you with engaging in a

22   conspiracy as follows:  That from in and around November of 2012

23   and continuing to on or about February 7, 2015, that you and a

24   co-defendant, who are especially designated global terrorists

25   and who will first be brought to and found in the United States

1    in the Eastern District of Virginia, along with Mohammed Emwazi

2    and others, known and unknown, did conspire to seize, detain,

3    and threaten to kill, injure, and continue to detain nationals

4    of the United States of America while traveling outside the

5    United States, including James Wright Foley, whose death

6    resulted from this offense; Kayla Jean Mueller, whose death

7    resulted from this offense; Steven Joel Sotloff, whose death

8    resulted from this offense; and Peter Edward Kassig, whose death

9    resulted from this offense, in order to compel a third person

10   and a governmental organization, including but not limited to

11   the United States of America and any part of its government to

12   pay a monetary ransom for the release of that U.S. national, and

13   to do and abstain from doing any act as an explicit or implicit

14   condition for the release of that person in violation of

15   Title 18, U.S. Code Section 1203.

16          So do you understand, Mr. Kotey, that in Count 1 you're

17   charged with conspiracy to commit hostage taking - the hostages

18   that I named - resulting in the death of those hostages?  Do you

19   understand that?

20          THE DEFENDANT:  Yes, I understand.

21          THE COURT:  And, Mr. Kotey, it's important that you

22   understand all the possible punishments that may result from

23   your pleading guilty to Count 1 of the indictment.  If death

24   resulted, the minimum sentence you could receive would be life

25   in prison.  You could receive, under the statute, death, but as

1    I understand it, the United States government has agreed that it

2    will not seek imposition of the death sentence in this case.

3              That's correct, is it not?

4              MR. FITZPATRICK:  That's correct, Your Honor.

5              THE COURT:  All right.  So the maximum penalty that you

6    face as a result of pleading guilty to Count 1 is life in

7    prison.

8              Now, with respect to Count 2 -- do you understand that,

9    Mr. Kotey?

10             THE DEFENDANT:  Yes, I understand.

11             THE COURT:  All right.  Let's go to Count 2, which is

12   the second count you intend to plead guilty to.  There you are

13   charged with the following:  That from in or about

14   November 22nd, 2012, to on or about August 19, 2014, you and

15   El Shafee Elsheikh, who was first brought in the

16   Eastern District of Virginia, Mohammed Emwazi and others, known

17   and unknown, all aided and abetted each other by -- or did seize

18   and detain and threaten to kill, injure, and continue to detain

19   James Wright Foley, a national of the United States of America

20   traveling outside the United States, in order to compel

21   James Wright Foley's parents and a governmental organization,

22   including but not limited to the United States of America, and

23   any part of its government, to pay a monetary ransom for the

24   release of James Wright Foley, and to do and abstain from doing

25   any act as an explicit or implicit condition for the release of

1    James Wright Foley, and James Wright Foley's death resulted from

2    the commission of this offense, all a violation of Title 18,

3    Section 1203 and 2.

4           So do you understand, Mr. Kotey, that what you're

5    charged with in Count 2 is hostage taking resulting in the death

6    of James Wright Foley?  Do you understand that?

7           THE DEFENDANT:  Yes, I understand.

8           THE COURT:  And do you understand that the minimum

9    penalty prescribed by law in these circumstances is life?  You

10   could have received death, but the government has agreed not to

11   seek the death penalty in this case.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  There would also be -- well, I'll cover

14   this at the end.  But there's also $100 assessment that has to

15   be imposed by statute for each of the eight counts.

16          There's no monetary fine, is there, Mr. Fitzpatrick?

17          MR. FITZPATRICK:  Well, subject to a statutory fine of

18   up to $250,000.  We have not agreed on a fine.

19          THE COURT:  All right.  Say again.

20          MR. FITZPATRICK:  We have not agreed on a fine as part

21   of the Plea Agreement.

22          THE COURT:  Right.  And in this Count 2, as in Count 1,

23   you could be required to pay a punitive fine of up to $250,000.

24          Now, Count 3, Mr. Kotey, is as follows:  Count 3 says

25   that from on or about August 4, 2013, to on or about February 7,

1    2015, you and El Shafee Elsheikh, who will first be brought to

2    and found in the Eastern District of Virginia, and Mohammed

3    Emwazi and others, known and unknown to the grand jury, all

4    aided and abetted by each other, did seize, detain, and threaten

5    to kill, injure, and continue to detain Kayla Jean Mueller, a

6    national of the United States traveling outside the

7    United States, in order to compel Kayla Jean Mueller's parents

8    and a governmental organization, including but not limited to

9    the United States of America and any part of its government, to

10   pay a monetary ransom for the release of Kayla Jean Mueller, and

11   to do and abstain from doing any act as an explicit or implicit

12   condition for the release of Kayla Jean Mueller.  And as the

13   indictment alleges, Kayla Jean Mueller's death resulted from the

14   commission of this offense in violation of U.S. Code

15   Section 1203 and 2.

16           So do you understand that what you're charged with is

17   hostage taking resulting in death of Kayla Jean Mueller?  Do you

18   understand that, Mr. Kotey?

19           THE DEFENDANT:  I understand that.

20           THE COURT:  And do you understand that, again, there's

21   a mandatory minimum term of imprisonment of life in prison?  It

22   could be death, but the government has agreed not to seek the

23   death penalty.  You could be required to pay a punitive fine of

24   up to $250,000, and you will be required to pay $100 special

25   assessment.

1         Do you understand all of that?

2         THE DEFENDANT:  Yes.

3         THE COURT:  All right.  Let's turn to page -- or not

4    page -- to Count 4.  In Count 4, Mr. Kotey, you're charged with,

5    from on or about August 4, 2013, to on or about September 2nd,

6    2014, you and El Shafee Elsheikh, who will first be brought to

7    and found in the Eastern District of Virginia, and

8    Mohammed Emwazi and others, known and unknown to the grand jury,

9    all aided and abetted by each other, did seize, detain, and

10   threaten to kill, injure, and continue to detain

11   Steven Joel Sotloff, a national of the United States of America

12   traveling outside the United States, in order to compel

13   Steven Joel Sotloff's parents and a government organization,

14   including but not limited to the United States of America and

15   any part of its government, to pay a monetary ransom for the

16   release of Steven Joel Sotloff, and to do and abstain from doing

17   any act as an explicit or implicit condition for the release of

18   Steven Joel Sotloff, and Steven Joel Sotloff's death resulted

19   from the commission of this offense, all in violation of

20   Title 18, U.S. Code Section 1203 and 2.

21        So do you understand, Mr. Kotey, that in Count 4 you're

22   charged with hostage taking resulting in the death of

23   Steven Joel Sotloff?

24        THE DEFENDANT:  Yes, I understand.

25        THE COURT:  And, again, the maximum or mandatory

1    minimum term of imprisonment is life in prison.  And although

2    you could have been charged and the government could have sought

3    the death penalty, it has agreed not to do so and will not be

4    sought in this case.

5             Next, we turn to Count 5.  Count 5, Mr. Kotey, is as

6    follows:  That from in and around November 2012 and continuing

7    to on or about February 7, 2015, you, again, and

8    El Shafee Elsheikh, who will first be brought to and found in

9    the Eastern District of Virginia, Mohammed Emwazi and others,

10   known and unknown to the grand jury, did conspire to commit

11   murder, as defined in Title 18 of U.S. Code Section 1111(a), by

12   unlawfully killing James Wright Foley, Kayla Jean Mueller,

13   Steven Joel Sotloff, and Edward Kassig.

14            Did I omit the count on Mr. Kassig?

15            MR. FITZPATRICK:  Yes, Your Honor.

16            THE COURT:  I did.  That's Count 5, isn't it?

17            MR. FITZPATRICK:  Yes, sir.

18            THE COURT:  That's what I omitted.  I'll come back to

19   that.

20            Let me go back to that, Mr. Kotey.  I inadvertently

21   omitted Count 5.  In Count 5, you're charged, as you were in the

22   previous count, with combining with Mr. El Shafee Elsheikh, who

23   will first be brought to and found in the Eastern District of

24   Virginia, Mohammed Emwazi and others, known and unknown to the

25   grand jury, all aided and abetted by each other, did seize,

 1   detain, and threaten to kill, injure, and continue to detain

 2   Peter Edward Kassig, a national of the United States of America

 3   traveling outside the United States, in order to compel Peter

 4   Edward Kassig's parents and a government organization, including

 5   but not limited to the United States of America and any part of

 6   its government, to pay a monetary ransom for the release of

 7   Peter Edward Kassig, and to abstain from doing any act as an

 8   explicit or implicit condition for the release of Peter Edward

 9   Kassig, and Peter Edward Kassig's death resulted from the

10   commission of this offense, all in violation of Title 18,

11   U.S. Code Section 1203 and 2.

12          So, Mr. Kotey, do you understand that in Count 5 of the

13   indictment, you're charged with hostage taking resulting in the

14   death of Peter Edward Kassig?  Do you understand that?

15          THE DEFENDANT:  Yes, I understand that.

16          THE COURT:  And do you understand that there's a

17   mandatory minimum term of imprisonment of life?  And as in the

18   other cases, the government could have sought the penalty of

19   death, but the government has agreed not to do so.  So you're

20   not subject to the death penalty; you're subject to the

21   mandatory minimum of life in prison.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  You'll also be subject to a punitive fine

25   of up to $250,000 and a special assessment of $100.

1          Now, I had already started on Count -- do you
2    understand that?
3          THE DEFENDANT:  Yes.
4          THE COURT:  And now I had already started on Count 6,
5    so I will repeat Count 6.  In Count 6, Mr. Kotey, you're charged
6    with the following:  From in and around November 2012 and
7    continuing to on or about February 7, 2015, you and
8    El Shafee Elsheikh, who will first be brought to and found in
9    the Eastern District of Virginia, and Mohammed Emwazi and
10   others, known and unknown, did conspire to commit murder, as
11   defined by Title 18, U.S. Code 1111(a), by unlawfully killing
12   James Wright Foley, Kayla Jean Mueller, Steven Joel Sotloff,
13   Peter Edward Kassig, all nationals of the United States, while
14   those nationals were outside the United States, each killing
15   being willful, deliberate, malicious, and premeditated and with
16   malice aforethought, in violation of Title 18, U.S. Code
17   Section 2332(b)(2).
18         So do you understand that's what you're charged with in
19   Count 6, namely conspiracy to murder a United States citizen
20   outside of the United States?
21         THE DEFENDANT:  Yes, I understand that.
22         THE COURT:  And do you understand that, again, there's
23   a mandatory minimum term of imprisonment of life in prison, and
24   in this case that sentence must run consecutively to any other
25   sentences imposed, which as a practical matter doesn't make any

1    difference.  But you need to be apprised of all of this.  And

2    you'll have to pay $100 special assessment and a fine of up to

3    $250,000.

4         Next, with respect -- so do you understand all of that,

5    Mr. Kotey?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Next, with respect to Count 7.  In Count 7,

8    you're charged with from in and around November 2012 and

9    continuing to on or about February 7, 2015, that you and

10   El Shafee Elsheikh, who will first be brought to and found in

11   the Eastern District of Virginia, and Mohammed Emwazi and

12   others, known and unknown to the grand jury, did conspire to

13   provide material support or resources, as that term is defined

14   by Title 18, U.S. Code Section 2339(a), namely personnel,

15   including themselves and services, knowing and intending that

16   they were to be used in preparation for and in carrying out a

17   violation of Title 18, U.S. Code Section 1203, which is hostage

18   taking, and Title 18, U.S. Code Section 2332(a)(1), which is

19   murder, and the deaths of James Wright Foley,

20   Kayla Jean Mueller, Steven Joel Sotloff, Peter Edward Kassig,

21   each a citizen of the United States, as well as the deaths of

22   British and Japanese nationals, resulting from the commission of

23   this offense, all in violation of United States Code

24   Section 2339(a).

25         So do you understand that that's what you're charged

1    with in Count 7, namely conspiracy to provide material support

2    or resources to terrorists and hostage taking and murder?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And, Mr. Kotey, do you understand that

5    there's a maximum term of life in prison because death resulted

6    from that crime?

7              THE DEFENDANT:  Yes.

8              THE COURT:  If for some reason you did not receive a

9    life sentence, then you would also be required to serve

10   five years of supervised release, and if you were to violate any

11   of the conditions of that release while you were on supervised

12   release, you could be returned to the prison for full supervised

13   release term.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Now we go to Count 8.  And in Count 8,

17   Mr. Kotey, you're charged with the following crime:  That from

18   in or about 2012 and continuing thereafter, up to and including

19   in or about January 2018, in offenses committed outside of the

20   jurisdiction of any particular state or district of the

21   United States, that you and El Shafee Elsheikh, who will first

22   be brought to and found in the Eastern District of Virginia,

23   Mohammed Emwazi and others, known and unknown to the grand jury,

24   did conspire to provide material support and resources, as that

25   term is defined in Title 18 of United States Code

1    Section 329(a), namely personnel, including yourself, and

2    services to a foreign terrorist organization, namely ISIS, which

3    at all relevant times was designated by the United States

4    Secretary of State as a foreign terrorist organization pursuant

5    to Section 219 of the Immigration and Nationality Act, knowing

6    that ISIS was a designated foreign terrorist organization; that

7    ISIS engages in and has engaged in terrorist activity; and that

8    ISIS engages and has engaged in terrorism; the deaths of

9    James Wright Foley, Kayla Jean Mueller, Steven Joel Sotloff,

10   Peter Edward Kassig, each a citizen of the United States, as

11   well as the deaths of British and Japanese nationals, resulted

12   from the commission of this offense, all in violation of

13   Title 18, U.S. Code Section 2339(b).

14          Do you understand that's the charge against you in

15   Count 8?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do you understand that, once again, the

18   maximum penalty is life because death resulted from the

19   commission of that crime?  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And there will be $100 special assessment

22   for each of the crimes alleged in the indictment, for a total of

23   $800.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  Now, Mr. Kotey, has anyone in

1    the United States or anyone anywhere promised you that you would

2    receive a specific sentence if you pled guilty to these charges?

3              THE DEFENDANT:  It is understood by me that the

4    mandatory would be life without parole.

5              THE COURT:  All right.  That's your understanding?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Is that correct.

8              THE DEFENDANT:  Yes.

9              THE COURT:  But I'm asking you whether anyone in the

10   government has promised you anything different?

11             THE DEFENDANT:  No, I haven't been promised anything

12   else.

13             THE COURT:  Has anyone tried to force you or to

14   pressure you or to coerce you in any way to plead guilty in this

15   case?

16             THE DEFENDANT:  No.

17             THE COURT:  Are you pleading guilty, then, freely

18   extremely and willingly and voluntarily because you're in fact

19   guilty of these offenses charged in Counts 1 through 8?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Mr. Kotey, you'll be sentenced under the

22   law which provides that the sentencing guidelines are advisory,

23   not mandatory.  Have you and your counsel discussed how the

24   sentencing guidelines and the sentencing statutes might apply to

25   your case?

1          THE DEFENDANT:  Sorry, could you repeat the question?

2          THE COURT:  Yes.  Have you had any discussions with

3     your attorneys as to how the sentencing laws of this country

4     would apply to your case?

5          THE DEFENDANT:  Yes, we've discussed in detail.

6          THE COURT:  And is it fair to say that you understand

7     that by pleading guilty to these charges, the minimum sentence

8     you could receive would be life in prison?  Is that correct?

9          THE DEFENDANT:  Yeah, life without parole.

10         THE COURT:  Life without parole, correct.  And in

11    one case, although it isn't, I think, relevant, the life

12    sentence could be imposed to run consecutively to the others.

13    Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Let me ask you again:  Has anyone tried to

16    force you, pressure you, or coerce you in any way to plead

17    guilty in this case?

18         THE DEFENDANT:  No.

19         THE COURT:  Are you pleading guilty, then, freely and

20    willingly and voluntarily because you are in fact guilty of

21    these offenses?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Mr. Kotey, it's important that you

24    understand that you have a right to persist in a plea of not

25    guilty to these charges, and if you do so, you have the right to

1    a trial by jury, and you have that right whether you are a

2    citizen of this country, whether you're here legally or

3    illegally.  No matter what, you have that right.

4           Do you understand that?

5           THE DEFENDANT:  Yes, I understand that.

6           THE COURT:  Now, it's important that you understand

7    that by pleading guilty, you give up your right to a jury trial.

8    Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Now, let me explain to you what rights that

11   entails.  If you insisted on persisting in your right to a jury

12   trial, you would receive all of the following rights.  And I do

13   this so you'll understand what it is you're giving up by

14   pleading guilty.

15          First, you would have the right to the assistance of

16   your counsel, and two counsel -- or two groups of counsel have

17   been appointed to represent you because your offense is, or was

18   potentially a capital offense.  So your first right that you'll

19   be giving up, or that you would have in the course of a trial is

20   the assistance of your counsel through all phases of the

21   proceedings against you.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Next, do you understand that if you persist

25   in a plea of not guilty, as you have an absolute right to do,

1    that you would be entitled, in the course of selecting a jury,

2    to strike 10 persons from a panel of prospective jurors for

3    whatever reason you please, subject only to the constitutional

4    constraint that neither you nor the government may strike any

5    prospective juror solely for reasons of race or gender?  Do you

6    understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And do you understand that a further right

9    you would have is that you would have the right to see and hear

10   all witnesses and all evidence against you, and to have that

11   evidence cross-examined in your behalf?  In other words,

12   Mr. Kotey, you cannot be prosecuted on the basis of secret

13   testimony or secret evidence.  You have the right to see it all,

14   to confront it all, and to have it all cross-examined in your

15   behalf.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And do you understand that you would also

19   have the right to testify before a jury, or if you choose, to

20   remain silent?

21             Now, the person who decides whether you testify or

22   remain silent is you, not your attorneys.  You make that

23   decision.  Now, of course you can receive advice from your

24   attorneys, but you must make that decision.  And if you decide

25   to remain silent, the Court will instruct the jury that the jury

1     may draw no inference from your silence.

2              Indeed, if you elect to remain silent, the Court will

3     tell the jury, instruct the jury, that the jury may draw no

4     inference from your silence at all because your right to remain

5     silent is absolute under the Constitution, and you may not be

6     penalized for exercising that right.

7              Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And next, do you understand that if you

10    persist in a plea of not guilty, as you have an absolute right

11    to do, then the government would be required to prove beyond a

12    reasonable doubt each and every element of these eight offenses

13    that you're pleading guilty to?  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And do you understand also that if you

16    persist in a plea of not guilty, the government would be

17    required to prove those, as I said, beyond a reasonable doubt,

18    and you would be entitled to the issuance of compulsory process

19    and subpoenas to compel the attendance of witnesses and evidence

20    to be presented in your behalf at the trial?

21             Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Now, Mr. Kotey, I've listed all the rights

24    that you would have if you persist in a plea of not guilty, and

25    after each one I've asked you whether you understood it, and you

1    said yes.  Do you understand that by pleading guilty, you'll

2    give up all those rights I've listed and there will be no trial

3    at all?

4             THE DEFENDANT:  Yes, I understand.

5             THE COURT:  Now, Mr. Kotey, you have a Plea Agreement

6    and a Statement of Facts that it appears you have signed.  Have

7    you read those documents?

8             THE DEFENDANT:  Yes, I've read them thoroughly.

9             THE COURT:  All right.  And did you have any difficulty

10   reading them?

11            THE DEFENDANT:  No.

12            THE COURT:  I'm going to have the court security

13   officer hand you what appear to be your Plea Agreement and

14   Statement of Facts that you've signed.  I want you to look at

15   those documents and then tell me whether they are your

16   Plea Agreement and Statement of Facts.

17            Is that your Plea Agreement, Mr. Kotey?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Is that your signature that appears at the

20   end of that document?

21            THE DEFENDANT:  That is.  That is my signature.

22            THE COURT:  All right.  And does your signature

23   appearing at the end of the Plea Agreement signify that you have

24   read the Plea Agreement, that you understand its terms and

25   conditions, and that you agree to them?

1            THE DEFENDANT:  That's correct.

2            THE COURT:  Is that your Statement of Facts, Mr. Kotey?

3            THE DEFENDANT:  That is my Statement of Facts.

4            THE COURT:  And is that your signature that appears at

5    the end of that document?

6            THE DEFENDANT:  That's right.

7            THE COURT:  And does your signature appearing at the

8    end of the Statement of Facts signify that you have read and

9    understood the Statement of Facts and you agree that it is true

10   and accurate in all respects?

11           THE DEFENDANT:  That's correct.

12           THE COURT:  All right.  Return those documents to the

13   bench, please.

14           Now, Mr. Kotey, I'm going to summarize the essential

15   terms of your Plea Agreement.  Pay careful attention to my

16   summary, because at the conclusion, I will ask you whether those

17   are the terms of your Plea Agreement with the government as you

18   understand them.

19           Under the Plea Agreement, Mr. Kotey, you agree to plead

20   guilty to all of the offenses charged in the pending eight-count

21   indictment which charge you with the following offenses:

22           Count 1, conspiracy to commit hostage taking resulting

23   in death, in violation of 18 U.S. Code Section 1203; Count 2,

24   hostage taking resulting in the death of James Wright Foley, in

25   violation of 18 U.S.C. Section 1203 and 2, Section 2, that is;

1    and Count 3, hostage taking resulting in the death of

2    Kayla Jean Mueller, in violation of 18 U.S.C. Sections 1203 and

3    Section 2; and Count 4, hostage taking resulting in the death of

4    Steven Joel Sotloff, in violation of 18 U.S.C. Sections 1203 and

5    Section 2; and Count 5, hostage taking resulting in the death of

6    Peter Edward Kassig, in violation of 18 U.S.C. Section 1203 and

7    Section 2; Count 6, conspiracy to murder United States citizens

8    outside of the United States, in violation of 18 U.S.C.

9    Section 2332(b)(2); and Count 7, conspiracy to provide material

10   support to terrorists, resulting in death, in violation of Title

11   18, U.S.C., -- U.S. Code Section 2339(a); and Count 8,

12   conspiracy to provide material support to a designated foreign

13   terrorist organization resulting in death, in violation of 18

14   U.S.C. Section 2339(b).

15              And, as the Plea Agreement reflects, as I went through

16   with you just a minute ago, the Plea Agreement provides that the

17   maximum term of imprisonment for each count is life.  And that's

18   because the Plea Agreement acknowledges that you cannot be

19   sentenced to life in this -- I mean, sentenced to death.  That

20   life is what you are facing.

21              And that the maximum penalties for each offense also

22   includes a fine of up to $250,000, a special assessment of $100

23   per count, for a total of $800; and a maximum supervised release

24   term of life.  And if you were to violate any of the conditions

25   of that supervised release while you were on supervised release,

1    you could be returned to prison for the full supervised release

2    term.

3              Let me stop on my summary right there.  I'll continue.

4    But I want to be sure that you agree, Mr. Kotey, that that's

5    what you are facing in this case.

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right.  Continuing, the Plea Agreement

8    goes on to provide, in my summary, that you're pleading guilty

9    because you're in fact guilty of the charged offenses; you admit

10   the facts set forth in the Statement of Facts filed with the

11   Plea Agreement; you agree that those facts establish your guilt

12   of the charged offense beyond a reasonable doubt; and that you

13   understand that the Statement of Facts as incorporated with the

14   Plea Agreement and will be the basis for the calculation of your

15   advisory sentencing guideline range.

16             The Plea Agreement continues, Mr. Kotey, and provides

17   that you're representing that you're satisfied that your

18   attorneys have rendered effective assistance to you in this

19   case, and that you understand that by entering into the Plea

20   Agreement that you'll be giving up your right to a jury trial.

21   And I had previously gone over your rights to a jury trial in

22   some detail with you, and I won't review those with you now.

23             The Plea Agreement goes on to provide that you

24   understand that the Court is bound by statute to impose a

25   mandatory life sentence, mandatory term of life in prison, but

```
 1    that the Court will also determine your sentence in accordance

 2    with Section 3553(a), which includes the Court's determination

 3    of the United States sentencing guidelines applicable in this

 4    case.

 5          And the Plea Agreement provides that you and the

 6    government stipulate, and will recommend to the Court after

 7    provision of the sentencing guidelines, that you and the

 8    government will recommend to the Court that the provisions of

 9    the sentencing guidelines apply in this case.

10          Now, that's an agreement you and the government have

11    reached.  It isn't binding on the Court, but I don't see at the

12    moment any reason to disagree with it because these sentences

13    are life in prison, as mandatory sentences.

14          But in the Plea Agreement, you and the government have

15    agreed to recommend to the Court that the guidelines in this

16    case, under various provisions of the guidelines, the sentencing

17    guidelines, are an offense level of 32, plus six, six additional

18    because there was a ransom demand or demand on the government;

19    an increase of four levels for life threatening or bodily

20    injury; dangerous weapon was used, for another two levels;

21    another two levels that you [sic] were not released before

22    30 days elapsed; 12 levels for terrorism; four levels for an

23    aggravating role, for a total offense level of 62, which, as I'm

24    sure your counsel told you, is well above the life imprisonment

25    requirement.
```

1          And you and the government further agree that you have

2   assisted the government in the investigation and prosecution of

3   your crimes by timely notifying the authorities of your

4   intention to enter a plea of guilty.  So for that, the

5   government has agreed that if you qualify for a two-level

6   decrease in your offense level, that the government will move

7   for an additional level of credit based on your timely decision

8   to plead guilty.

9          And you and the government have agreed to recommend to

10  the Court that the sentence imposed on Counts 1 through 8 should

11  be served concurrently.  The problem with that is that the

12  statute requires one of those sentences to be served

13  consecutively.  Were you aware of that, Mr. Kotey?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Let me ask counsel.  Were you aware of

16  that?

17          MR. FITZPATRICK:  Can you repeat the question,

18  Your Honor?

19          THE COURT:  You and the defendant have agreed to

20  recommend to the Court that the sentences imposed on Counts 1

21  through 8 should be served concurrently.

22          MR. FITZPATRICK:  Concurrent.

23          THE COURT:  One of those life sentences has to be

24  consecutive.  Am I right?

25          MR. FITZPATRICK:  I'm not aware of that, Your Honor.

1          THE COURT:  Well, hang on a minute.  I may be wrong.

2          MR. FITZPATRICK:  As I understand it, Your Honor,

3    there's no statutory requirement for consecutive sentences,

4    unlike you would see in, say, a firearms case.

5          THE COURT:  Well, wait a minute.  Let me tell you which

6    count specifically.

7          And I may be wrong about this, but look at Count 6,

8    conspiracy to murder United States citizens outside the

9    United States.  When the crime results in death, then that

10   mandatory minimum of life must run consecutively.  Am I

11   incorrect in that regard?

12         MR. FITZPATRICK:  Let me check the statute.

13         THE COURT:  In any event, you and the defendant have

14   agreed to recommend to the Court that they all run concurrently.

15   Am I right?

16         MR. FITZPATRICK:  That's correct.

17         THE COURT:  Well, that's your agreement.  That stands.

18   At sentencing, I'll have to determine whether the law precludes

19   me from doing it with Count 6.

20         As a practical matter, though, Mr. Kotey, I don't see

21   that it makes any difference.  Not many of us have more than one

22   life.

23         THE DEFENDANT:  Correct.

24         THE COURT:  Now, let me go on with my summary of the

25   Plea Agreement, Mr. Kotey.  You'll recall that I was going

1    through your Plea Agreement, provision by provision, to give you

2    a summary.  And I'm doing it because at the conclusion, I will

3    ask you whether those are the terms of your Plea Agreement with

4    the government as you understand it.

5           Now, after this provision in which you and the

6    government have agreed to recommend to the Court that your life

7    sentences run concurrently, the Plea Agreement goes on to say

8    that you and the government agree that there exists no

9    aggravating or mitigating circumstances of a kind or to a degree

10   not adequately taken into account by the sentencing commission

11   in formulating the guidelines that should result in a sentence

12   outside of the advisory guideline range.

13          All of this is somewhat academic because the guidelines

14   themselves would require life in prison.  That's right, isn't

15   it, Ms. Mertz?

16          MS. MERTZ:  That's correct, Your Honor.

17          THE COURT:  So it's a bit academic.

18          In any event, Mr. Kotey, your Plea Agreement goes on to

19   provide that you understand that you would ordinarily, under the

20   law, have a right to appeal the sentence imposed.  But in your

21   Plea Agreement, you're waiving your right to appeal your

22   conviction and any sentence within the statutory maximum

23   described above.  And you waive that right on any ground other

24   than ineffective assistance of counsel claim cognizable on

25   direct appeal.

1          You also waive your right to file for an extraordinary

2     and compelling sentence reduction set forth in 3582 of Title 18.

3     And you also waive all rights, whether asserted directly or by a

4     representative, to request to receive from any department or

5     agency any records pertaining to the investigation or

6     prosecution of this case, including, without limitation, any

7     record that may be sought under the Freedom of Information Act.

8          The Plea Agreement continues, Mr. Kotey, and provides

9     that in return for your plea, if the Court accepts it, the

10    government agrees not to prosecute you further in the

11    Eastern District of Virginia for the specific conduct described

12    in the indictment or the Statement of Facts.  The only exception

13    to that is a crime of violence not charged in the indictment.

14    If such a charge is brought, then the government may allege and

15    prove the conduct described in the indictment or the Statement

16    of Facts.

17         The Plea Agreement goes on, Mr. Kotey, and provides

18    that if you comply with the terms of your Plea Agreement and

19    take all reasonable measures under the law -- I beg your pardon.

20    If you comply with the terms of the Plea Agreement, then the

21    U.S. Attorney's Office for the Eastern District of Virginia

22    agrees to take all reasonable measures under the law to seek

23    your transfer to the United Kingdom for the prosecution by the

24    United Kingdom's Crown Prosecution Service after you have served

25    15 years in the custody of the United States Department of

1    Justice's Bureau of Prisons.

2          Now, prior to this transfer to the United Kingdom, you

3    agree to plead guilty in a United Kingdom prosecution, by which

4    you would accept responsibility for violations of United Kingdom

5    law, and would further agree that there is a realistic prospect

6    of conviction and prosecution that is required in the public

7    interest.

8          Now, if an agreement between you and the United Kingdom

9    government is not reached or fulfilled for any reason; that is,

10   an agreement to plead guilty to these violations, then you agree

11   that you're not relieved from this Plea Agreement or any

12   sentence imposed on you by this court for convictions of

13   Counts 1 through 8 of the indictment.

14         So in addition to violating other provisions of

15   United Kingdom law, including provisions in the United Kingdom's

16   Terrorism Act, you agree that your conduct in Syria violated a

17   number of United Kingdom criminal law provisions, including

18   Section 63B of the Terrorism Act of 2000; that is, the murder of

19   David Haines, Alan Henning, James Foley, Steven Sotloff, and

20   Peter Kassig; and Section 1 of the Taking of Hostages Act of

21   1982, hostage taking of John Cantlie, David Haines,

22   Alan Henning, Kayla Jean Mueller, James Foley, Steven Sotloff,

23   and Peter Kassig.

24         And for those enumerated offenses, you agree that the

25   maximum term of imprisonment in the United Kingdom is natural

1    life without parole, and that this would be a fair and proper

2    punishment which shall be served consecutively to the punishment

3    imposed in the United States.

4            Now, you also agree that in the event the sentence

5    imposed on you in the United Kingdom is shorter than life, or if

6    the actual sentence served in the United Kingdom is less than

7    life, then -- and for any reason, then you agree, upon

8    completion of the United Kingdom sentence, to serve the

9    remainder of your United States' imposed life sentence in the

10   United Kingdom, if legally available, or if he agrees to a

11   transfer to the United States, to serve the remainder of your

12   sentence, to serve it here.  And you knowingly and voluntarily

13   waive any right to appeal the sentence or to seek release in the

14   United Kingdom at any time or for any reason.

15           Now, you've also -- the U.S. Attorney's Office in the

16   Plea Agreement agrees to take all reasonable steps under the law

17   to seek your transfer to the United Kingdom pursuant to the

18   terms of this Plea Agreement, with the understanding that the

19   transfer would be subject to the sole discretion of the

20   United Kingdom.

21           And you would agree to a transfer to the United Kingdom

22   Extradition Treaty of 2000 or pursuant to the Mutual Legal

23   Assistance Treaty between the United States and the United

24   Kingdom; or by any other lawful means, without prejudice or

25   transfer under any treaty provisions or other lawful means, you

1    further agree that your transfer to the United Kingdom would be

2    proper under Article 11 of the MLAT.

3            Now, you've also agreed to cooperate with the

4    United States and British governments by truthfully disclosing

5    all information known by you pursuant to the terms set forth in

6    Paragraphs 9 and 11, which I'll come to in a moment, of this

7    Plea Agreement.  And you submit that your transfer under the

8    terms of Article 11 would be proper, and the U.S. Attorney's

9    Office for the Eastern District of Virginia agrees to take all

10   reasonable measures to seek a transfer under any lawful means

11   pursuant to the terms of the Plea Agreement.

12           Let me ask you, Mr. Fitzpatrick, let's suppose I, as

13   the law appears to require, I impose a sentence of life --

14   whether one of them is consecutive or not doesn't matter, but a

15   term of life in prison without parole for those crimes -- and

16   then he is transferred pursuant to the terms of his

17   Plea Agreement to the United Kingdom.  What happens if in the

18   United Kingdom he does not receive life?  Is he returned to the

19   United States to finish the sentence that I impose on him?

20           MR. FITZPATRICK:  Yes.  Or he can serve the remainder

21   of his sentence within the United Kingdom if that option is

22   legally available.  If it is not legally available, he'll be

23   transferred, under the same provision, back to the United States

24   to serve the remainder of his sentence.

25           THE COURT:  Mr. Kotey, did you understand that to be

1      the case?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  All right.  Let's continue.  The

4      Plea Agreement continues that you agree to provide full,

5      complete, and truthful cooperation to the United States, and if

6      you fail to provide full, complete, and truthful cooperation,

7      the government may be released from its obligations under the

8      Plea Agreement, including the obligations described in that

9      paragraph about transferring you to Britain, or to the

10     United Kingdom, after 15 years if you're not truthful.

11                 Now, you've agreed to cooperate fully and truthfully

12     with the United States and provide the government with all of

13     the information you know about any criminal activity, not just

14     that that's in the indictment.  But if you know about any

15     criminal activity, you're obligating yourself to disclose that

16     to the government.

17                 Now, specifically in connection with your obligation to

18     cooperate, you have agreed to be reasonably available for

19     debriefings, pretrial conferences if the government may require.

20     You've also agreed to cooperate with all foreign governments

21     seeking information from you.  You also agree to supervised

22     direct meetings with all victim family members and released

23     hostages if those victims request any such supervised direct

24     meetings.

25                 You also agree to provide all documents or records or

1    other writings or materials of any kind in your possession or

2    under your care, custody, or control relating in any way to the

3    matters under investigation.

4         You've also agreed, at the request of the United States

5    government, to submit voluntarily to a polygraph examination.

6    That's a lie detector test.  And it will be the government's

7    prerogative to choose the polygraph examiner and specify the

8    procedures for the examination.

9         You've also agreed that the Statement of Facts that

10   you've signed and made a part of the Plea Agreement is limited

11   to facts required to support the plea, and that you'll provide

12   more detailed facts relating to this case during ensuing

13   debriefings.  And the Plea Agreement notes that you're on notice

14   that if you violate any federal, state, or local criminal law

15   while cooperating, that could affect whether or not you've

16   complied with this Plea Agreement.

17        The Plea Agreement goes on to provide that the

18   government agrees that it will not use any truthful information

19   you provide pursuant to this agreement to prosecute you further

20   in the United States.  And the government agrees that no

21   truthful information that you provide will be used in

22   determining the applicable guideline range, except for relevant

23   conduct, and nothing in the Plea Agreement prevents the

24   government in any way from prosecuting the defendant, you,

25   should you knowingly provide false, untruthful, perjurious

1    information or testimony, or from using information provided by

2    you in furtherance of any forfeiture action.

3          Now, the Plea Agreement is not conditioned on any

4    charges being brought against any other person.  In other words,

5    in order for you to satisfy your cooperation obligation,

6    Mr. Kotey, it isn't necessary for you to provide information

7    that results in charges being brought against other persons.

8    All that's necessary in order for you to satisfy your obligation

9    to cooperate is for you to provide full, complete, and truthful

10   cooperation.

11         The Plea Agreement goes on to provide that you

12   understand and agree that any monetary penalties imposed on you,

13   including restitution, will be due and payable immediately and

14   subject to immediate enforcement by the United States as

15   provided for in the law.  And if the Court imposes a schedule of

16   payments, that's merely a minimum means of collecting the

17   penalty.  The government, as I said, could obtain a judgment and

18   execute on the judgment immediately.

19         Now, you've agreed to participate voluntarily in the

20   Bureau of Prisons Inmate Financial Responsibility Program,

21   regardless of whether the Court specifically directs it or not.

22   And you've agreed to make good faith efforts toward payment of

23   all monetary penalties.  And as I told you earlier, the

24   Plea Agreement records it as well; you'll have to pay $100 per

25   each of the eight felony counts, for a total of $800.

1          You've also agreed, in your Plea Agreement, that you

2    understand that restitution is mandatory under the law, and

3    you've agreed to the entry of a restitution order for the full

4    amount of the victims' losses as determined by the Court.

5          Now, you and the government agree that, at a minimum,

6    the families of the four American victims identified in the

7    indictment have suffered losses that are entitled to

8    restitution.  And you understand, Mr. Kotey, that forfeiture and

9    restitution are separate and distinct financial obligations that

10   must be imposed.

11         And you further understand that restitution can be

12   enforced, will be enforced under the law, and you acknowledge

13   that the determination and identities, addresses, and loss

14   amounts for other victims -- for all victims in this matter is a

15   somewhat complicated time-consuming process.  And so you've

16   agreed that the Court may defer the imposition of restitution

17   until after sentencing; however, you specifically waive the

18   90-day provision found in the law and consent to the orders of

19   restitution at any time after sentencing.

20         However, Mr. Fitzpatrick, I think you understand that I

21   expect you to make every effort to ascertain, determine the

22   amount of restitution prior to sentencing so that I can enter an

23   appropriate order that you have submitted to the defendant and

24   he can agree to.  If he doesn't agree, then of course I'll make

25   a ruling.  But I want to deal with that at the time of

1    sentencing.

2         MR. FITZPATRICK:  I understand, Your Honor.  We will do

3    that.

4         THE COURT:  And you understand, Mr. Kotey, as the

5    Plea Agreement records, that forfeiture of assets is part of the

6    sentence that must be imposed in this case.  And you've agreed

7    to waive all constitutional and statutory challenges you might

8    have to any forfeiture carried out in accordance with this

9    Plea Agreement.  And you waive any failure by the Court to

10   advise you of the applicable forfeiture.  Of course, that's what

11   I'm doing right now.

12        And you admit and agree that the conduct described in

13   the indictment and the Statement of Facts provides a sufficient

14   factual and statutory basis for the forfeiture of the property

15   sought by the government.  You'll have to forfeit any property

16   used to facilitate or commit the offense, or any property

17   traceable to the profits or proceeds of the offense.

18        And the Plea Agreement goes on to record that you

19   acknowledge that you're removable from the United States, and

20   you agree not to contest any removal proceeding.

21        But if things go according to plan, Mr. Fitzpatrick, he

22   would be removed by his agreement that the agreement of the

23   United Kingdom after 15 years here to serve -- or to be

24   prosecuted in the United Kingdom and serve any sentence there.

25   Is that right?

1          MR. FITZPATRICK:  That is correct, if he's in

2     compliance with the agreement and if the United Kingdom receives

3     him.

4          THE COURT:  All right.  And you understand that,

5     Mr. Kotey?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  The Plea Agreement goes on to

8     provide that you waive any rights you might have related to

9     removal, including a claim of asylum, withholding of

10    deportation, voluntary departure, adjustment of status -- but

11    you don't have status -- and protection under Article 3 of the

12    Convention Against Torture.

13         And you specifically acknowledge that you've never been

14    prosecuted and have no present fear of persecution -- I meant

15    persecution, not prosecution.  That you've never been persecuted

16    in and have no present fear of persecution in the United Kingdom

17    on account of race, religion, nationality, membership in a

18    particular social group, or political opinion.  And you

19    acknowledge also that you've never been tortured in the

20    United Kingdom, nor do you have any present fear of torture in

21    the United Kingdom.

22         The Plea Agreement continues and provides that its

23    effective when you signed it.  If there's an allegation by you,

24    Mr. Kotey, or by the government that there's been a breach of

25    the agreement, the Court will hold a hearing, and the party

1    alleging the breach will have the burden of proving the breach

2    by a preponderance of the evidence.

3           If I find, Mr. Kotey, that you're in breach of the

4    agreement and the government seeks and obtains from the Court

5    the permission to withdraw from the Plea Agreement, then the

6    government will be free to prosecute you for any offense it

7    knows about, including what's in the indictment, and in doing

8    so, it would be free to use against you all of the information

9    it's obtained from you, including the Statement of Facts, and

10   you would not be able to rely on any statute, rule, or

11   constitutional provision to suppress the use of that

12   information.

13          And, finally, Mr. Kotey, the Plea Agreement notes that

14   it's the full and complete agreement between you and the

15   government and that there aren't any other secret or side

16   arrangements or understanding relating to your pleas of guilty.

17          Now, are those all that I've summarized, including a

18   few interruptions, the terms of your Plea Agreement, Mr. Kotey,

19   with the government as you understand it?

20          THE DEFENDANT:  Yes, they are.  I would just like to

21   emphasize on the point of --

22          THE COURT:  Yes, go ahead.

23          THE DEFENDANT:  -- cooperation, that my cooperation is

24   truthful cooperation, and that is not conditional upon my

25   testimony in the event that my co-defendant proceeds to trial.

```
 1                THE COURT:  I think that's consistent with my reading
 2      as well, Mr. Kotey.
 3                Mr. Fitzpatrick, he's not obligated to testify in the
 4      event Mr. Elsheikh goes to trial.  He's not obligated to
 5      testify?
 6                MR. FITZPATRICK:  That's correct, Your Honor.
 7                THE COURT:  He is obligated to cooperate and provide
 8      you all of the information, but he is not obligated to testify?
 9                MR. FITZPATRICK:  Correct, Your Honor.  He also
10      understands that the corresponding Rule 35 sentence reduction
11      language has been removed from his Plea Agreement as well.
12                THE COURT:  Yes.  And you understand that, Mr. Kotey?
13                THE DEFENDANT:  Yes, the 5(k)(1).
14                THE COURT:  Yes.  In other words, you will not get a
15      government motion for reduction of sentence based --
16                THE DEFENDANT:  That's correct.
17                THE COURT:  -- on your cooperation.  Do you understand
18      that?
19                THE DEFENDANT:  I understand.
20                THE COURT:  Now, let me go back and ask you, given the
21      clarification you made with respect to testimony, are those the
22      terms of your Plea Agreement that I've summarized here over
23      these past few minutes, are those the terms of your
24      Plea Agreement with the government, as you understand it?
25                THE DEFENDANT:  Yes, they are.
```

1           THE COURT:  Has anyone made any other or different kind

2    of promise or assurance to you of any kind whatsoever in an

3    effort to induce you to plead guilty?

4           THE DEFENDANT:  None whatsoever.

5           THE COURT:  All right.  And I will ask you one more

6    time, has anyone tried to force you, pressure you, or coerce you

7    in any way to plead guilty in this case?

8           THE DEFENDANT:  Not at all.

9           THE COURT:  And are you pleading guilty freely,

10   willingly, and voluntarily?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Now, do you understand that if you persist

13   in a plea of not guilty, the government will be required to

14   prove beyond a reasonable doubt each and every element of the

15   offense charged, the offenses charged in Counts 1 through 8?

16          THE DEFENDANT:  Yes.

17          THE COURT:  What that means, Mr. Kotey, is the

18   following:  With respect to Count 1, the government would be

19   required to prove beyond a reasonable doubt that a conspiracy

20   existed between you and Elsheikh -- the government would have to

21   prove that you and Elsheikh and perhaps others had some kind of

22   arrangement or understanding to engage in this conspiracy to

23   seize, detain, threaten, or kill U.S. nationals; Foley, Mueller,

24   Sotloff, and Kassig.

25          Do you understand the government would have to prove

1    that there was a conspiracy; that you joined the conspiracy

2    freely, willingly, and voluntarily, knowing what the conspiracy

3    was about and attempting to do; and that you weren't coerced in

4    any way?  Do you understand --

5              THE DEFENDANT:  Yes.

6              THE COURT:  -- the government would have to prove all

7    of that beyond a reasonable doubt?

8              THE DEFENDANT:  Yes.

9              THE COURT:  All right.  And did you do what's charged

10   in Count 1 of the indictment, Mr. Kotey?

11             THE DEFENDANT:  Yes, I did.

12             THE COURT:  Tell me in your own words, sir, what you

13   did, and I'll tell you that I'm going to ask you that for each

14   of the counts.  But for this one, you can talk about hostages,

15   but for the others I'm going to ask you specifically about each

16   one.

17             So tell me what you did with respect to Count 1.  That

18   is, did you join a conspiracy to commit hostage taking that

19   resulted in death?

20             THE DEFENDANT:  Sorry?

21             THE COURT:  Did you participate or join willingly and

22   knowingly a conspiracy to commit hostage taking resulting in

23   death?

24             THE DEFENDANT:  Yes, I did.

25             THE COURT:  And can you tell me in your own words

 1    briefly what you did.  Or not briefly, as you choose.

 2          THE DEFENDANT:  If I may, I have prepared a summary,

 3    that which would explain all eight counts.

 4          THE COURT:  All right.  Well, that may be more

 5    appropriate at sentencing.  I just want to know factually what

 6    you did with respect to each of these counts.

 7          THE DEFENDANT:  These cover all eight counts, and they

 8    are facts as they occurred.  They're very brief.

 9          THE COURT:  All right.  Well, let's begin that way,

10    although this is not a time for you to attempt to justify or to

11    argue why you did it.  You understand that?

12          THE DEFENDANT:  I understand.

13          THE COURT:  All right.  Go ahead, sir.

14          THE DEFENDANT:  Okay.  In August of 2012, I departed

15    the United Kingdom for Syria along with Mohammed Emwazi, the man

16    who would later appear in Islamic State media releases where he

17    is depicted, filmed beheading captives, including but not

18    limited to U.S. and United Kingdom citizens.

19          I left the United Kingdom for Syria in order to engage

20    in the military fight against the Syrian Armed Forces of

21    President Bashar al-Assad.  I departed the United Kingdom while

22    holding the belief and understanding that the Islamic concept of

23    armed Jihad was a valid and legitimate course and means by which

24    a Muslim defends his fellow Muslims against injustice, and

25    thwarts against any attempt by others to stifle the efforts of

1    Muslims to establish -- in establishing Islamic governance in --

2             THE COURT:  How much more do you have, Mr. Kotey?

3             THE DEFENDANT:  Not much.

4             THE COURT:  Because this is what I expected you might

5    say at sentencing.  It isn't an answer to my direct question.

6    You're now giving me reasons about why you did things.  But go

7    ahead and finish your statement if it's brief.

8             THE DEFENDANT:  Okay.  So, therefore, I accept that I

9    would have been perceived and deemed as being a radical who

10   holds extremist views.

11            I arrived in Syria in October of 2012, just under

12   two months of my departure from the United Kingdom, and within

13   months after my arrival, I became aware of Emwazi's involvement,

14   after our brief separation, in operations to capture and detain

15   non-Muslim foreigners as part of what was then the main nucleus

16   of an external security unit of the Islamic State.  I then

17   joined Emwazi in these operations, which included the planning

18   and execution of capture-and-detain operations on predominantly

19   western non-Muslims, in addition to the planning of external

20   operations.

21            While engaging in these activities, I offered my formal

22   pledge of allegiance to the Islamic State and its then leader,

23   Abu Bakr al-Baghdadi, knowing that the Islamic State was hostile

24   towards the United States, the United Kingdom, and other western

25   and local governments, and with the full knowledge that the

1     United States considered the Islamic State to be a terrorist

2     entity.

3           THE COURT:  Is that the end?

4           THE DEFENDANT:  No.

5           THE COURT:  All right.  Go on.  How much more do you

6     have?

7           THE DEFENDANT:  Probably four or five points.

8           THE COURT:  Do it quickly.  Because those weren't the

9     questions I was asking.  You're now giving me your reasons for

10     what you did, and that's not really what I asked.  I asked what

11     did you do.

12           THE DEFENDANT:  This is where I will cover that.

13           THE COURT:  All right.  Go on.

14           THE DEFENDANT:  It was while engaged in these

15     activities that I came into contact with those four

16     U.S. citizens mentioned in the indictment.  They are

17     Peter Kassig, Kayla Mueller, Steven Sotloff, and James Foley,

18     along with three British citizens, Alan Henning, David Haines

19     and John Cantlie, in addition to a number of other European

20     citizens whom had been captured either by Emwazi, myself, or

21     other security cells operating cross Northern Syria at the time.

22           Upon the orders of the Islamic State senior leadership,

23     I, along with others, opened up channels of negotiation with

24     authorities, families, and representatives of those captives

25     held by the Islamic State.  This involved me visiting the

 1    detention facilities wherein the foreign captives were being

 2    held, and interacting with them in every capacity that would

 3    further the prospects of our negotiation demands being met,

 4    commencing with the extraction of communication details and

 5    contacts.

 6               THE COURT:  Does that complete it?

 7               THE DEFENDANT:  No.

 8               THE COURT:  All right.  Finish it.

 9               THE DEFENDANT:  The conditions or demands of these

10    negotiations on the part of the Islamic State, particularly as

11    it related to the United States and the United Kingdom's

12    citizens, were the release of Muslims held in U.S. custody; in

13    specific, the female prisoner, Dr. Aafia Siddiqui, both held in

14    Guantanamo Bay, and others held as a result as the U.S.'s war on

15    terror --

16               THE COURT:  All right.

17               THE DEFENDANT:  -- in addition to large sum ransom

18    payments.

19               I was principally involved in every process of these

20    negotiations, including but not limited to the writing up,

21    sending, and receiving of emails and Proof of Life pictures and

22    videos, the planning and execution of operations to collect the

23    ransom payments paid by European countries, the transfer of

24    those European captives to the Syrian-Turkish border, whereby

25    they were released after payment, and I was also involved in the

1    recording of a number of Proof of Life videos and pictures that

2    were sent to the families and representatives of those held

3    captive, which included but was not limited to the U.S. and UK

4    citizens.

5            This role of mine required that I at times was engaged

6    in acts of violence or the threat thereof against the captives

7    in order to subdue them and in order to compel those western

8    governments, included but not limited to the United States, to

9    act fast and cooperate and comply with our demands.  I had no

10   doubt that any failure of those foreign governments to comply

11   with our demands would ultimately result in either the

12   indefinite detention of those foreign captives or their

13   execution.  Though having been informed beforehand of the order

14   to do so, I coincidentally was not myself physically present at

15   any of those executions carried out against the Western

16   captives.

17           After my involvement and role with the foreign captives

18   came to an end, I then went on to assume a number of roles

19   within the Islamic State; that is, up until my capture in

20   January 2018, such as head of the special forces training camp,

21   the office for external operations, mainly recruitment, but at

22   times extended to other roles; a sniper within the Islamic State

23   sniper brigade, an assistant or aide to the battlefield

24   operations coordinator for the special forces.  I worked as part

25   of the Islamic State's English media department, and then I

1    joined the central operations room, mainly involved in military

2    intelligence and the preparing of data reports for senior

3    Islamic State leadership.

4           THE COURT:  All right.  So you did join the conspiracy

5    to capture hostages, and you knew that the capture -- that you

6    were trying to get ransom, and you knew that their capture would

7    result, and did result, in their death by Emwazi?

8           THE DEFENDANT:  That's right.

9           THE COURT:  And I take it you're aware that he's no

10   longer living?

11          THE DEFENDANT:  Yeah, he was killed in a U.S. drone

12   strike in 2015.

13          THE COURT:  You may be seated for a moment, Mr.  Kotey.

14   I'm going to have the prosecutor, Mr. Fitzpatrick, tell the

15   Court what the government would prove were this matter to go to

16   trial.

17          After he finishes that, Mr. Kotey, I will have you

18   return to the podium and tell the Court whether what he has said

19   is true and accurate in all respects.  And after that, I will

20   hear you formally plead, if you wish, to plead guilty to these

21   counts one at a time.

22          All right.  Mr. Fitzpatrick.

23          MR. FITZPATRICK:  Your Honor, before I begin with the

24   Statement of Facts, may I just address the Court 's question

25   about the consecutive sentence issue to clear up Count 6?

1           THE COURT:  Yes, you may.

2           MR. FITZPATRICK:  Count 6 in the indictment,

3    Your Honor, charges the defendant with participating in the

4    conspiracy to murder U.S. citizens abroad.  Under Code

5    Section 18, U.S.C. 2332(b)(2), that section does not require

6    consecutive sentence.  That may be run concurrently with all

7    other offenses.

8           The Court was referring to another section within the

9    same chapter, not applicable in this case.

10          THE COURT:  All right.  I welcome the correction.

11          MR. FITZPATRICK:  Thank you, Your Honor.

12          THE COURT:  In any event, you have made clear that you

13   will recommend concurrent sentences, and obviously what I was

14   saying is if the law permits that, that's one thing.  It doesn't

15   appear to permit it, but you've corrected me, and I accept that.

16   Let's go on.

17          MR. FITZPATRICK:  Thank you, Your Honor.

18          Your Honor, had this matter proceeded to trial, the

19   evidence would show that the defendant was in fact raised in

20   London.  At a young age, he became friends with Mohammed Emwazi

21   and El Shafee Elsheikh.  And, Your Honor, the evidence would

22   also show that in January -- on or about January 4th, 2018, the

23   defendant was apprehended by the Syrian Democratic Forces, along

24   the El Shafee Elsheikh as they were trying to get out of Syria

25   and head to turkey.  They were apprehended by the Syrian

1   Democratic Forces.

2          Going back to 2011, Your Honor, as reflected in the

3   Statement of Facts, the defendant, El Shafee Elsheikh, joined a

4   protest against the English Defense League in London on the

5   anniversary of September 11th, 2001, the 10-year anniversary.

6   The English Defense League had responded to a protest by a group

7   called Muslims Against Crusaders.  The defendant, Mr. Elsheikh,

8   and a group of others came to confront the English Defense

9   League.  They were detained and their electronic devices were

10  seized and downloaded.

11         So you can see from those events set forth in the

12  Statement of Facts, Your Honor, Mr. Kotey and Mr. Elsheikh have

13  a long relationship with one other.

14         As mentioned in the defendant's statement and is also

15  reflected in the Statement of Facts, the defendant traveled to

16  Syria from the United Kingdom in late August of 2012.  He left

17  with Mohammed Emwazi.  Also reflected in the Statement of Facts

18  is co-defendant El Shafee Elsheikh had left several months prior

19  to that.  The defendant had also tried to leave several months

20  prior to that but was turned back and returned to the

21  United Kingdom.  Mohammed Emwazi had also made attempts to leave

22  London earlier than August of 2012, but he too was turned back.

23         When they finally left in August of 2012, their trek to

24  Syria took approximately two months.  The defendant, subsequent

25  to Mohammed Emwazi's death, the killing by the United States

1    military, narrated a tribute to Mohammed Emwazi which was

2    published in a French version of an ISIS propaganda magazine by

3    the name of *Dar al-Islam*.   It is written in the first-person,

4    and with specificity he narrates his trek from London to Syria

5    with Mohammed Emwazi.   That information that he provides in the

6    ISIS online propaganda magazine is contented by evidence

7    submitted by the -- collected by the British government and

8    British law enforcement.

9          In addition, Your Honor, when the defendant and

10   Elsheikh, after several months in Syria did become involved in

11   the European and American and British hostage-taking scheme,

12   they were -- they had leadership roles within that scheme and

13   the number of released hostages would describe their conduct -

14   that being Mr. Kotey's, Mr. Elsheikh's - as they would engage in

15   prolonged physical and psychological violence towards the

16   hostages.   This would include punches to the torso, causing

17   bruises, other disfigurement.   This would include choke holds,

18   this would include other forms of physical violence.

19          During the course of the hostage taking scheme,

20   Your Honor, the four Americans in this case - James Foley,

21   Kayla Mueller, Steven Sotloff, Peter Kassig - were all detained

22   during the period of November 22nd, 2012, when James Foley was

23   detained.   Mr. Foley was detained by the radical forces with

24   John Cantley.   They ultimately were transferred under the

25   direction of this hostage-taking scheme.

 1            Over the course of time, going into 2013, on April --

 2    or excuse me, August 4th of 2013, Kayla Mueller and

 3    Steven Sotloff were both abducted by the Islamic State in

 4    separate events.  And then turning to October of 2013, Peter

 5    Kassig was abducted again by the Islamic State.

 6            Ultimately, Your Honor, the Americans were held with

 7    various European hostages and British hostages.  Throughout

 8    2013, they were moved periodically to different detention

 9    facilities.  Ultimately in early 2014, February to be specific,

10    all of the hostages were held at a facility outside of Raqqah,

11    Syria.  It was an oil production facility that the hostages

12    would call the desert prison.  At that location, all the

13    hostages had come together, including Ms. Mueller.  Ms. Mueller

14    was held at a separate -- in the same facility, in a separate

15    room from the men.

16            On one occasion, the defendant and Emwazi brought

17    Ms. Mueller out of the female room where the females were

18    detained, brought them to the male room, and had her speak to

19    the male hostages and show herself and explain herself, and she

20    made statements to them.  That's also reflected, Your Honor, in

21    the Statement of Facts.

22            Your Honor, after the defendant's apprehension in

23    January of 2018, he made statements admitting his conduct in

24    terms of being involved in the European and American

25    hostage-taking scheme.  In addition, the defendant voluntarily

1    submitted to numerous media interviews and other recorded

2    interviews.  The defendant described the conduct, the physical

3    conduct that he and others engaged in towards the hostages as a

4    form of controlling the hostages so that they would not try to

5    escape or plan to escape.

6        Your Honor, during the course of the hostage-taking

7    scheme, ransom-demand emails were sent to the victim families.

8    Interestingly, Mr. Foley was abducted, as I said, on

9    November 22nd, 2012; the family of Mr. Foley did not receive a

10   ransom demand until November 26th of 2013.  Your Honor, in that

11   ransom demand, the terrorist organization introduces themselves,

12   they announce that they have Mr. Foley, and they plainly state:

13   "We want money fast."

14       Your Honor, they used an email address that was

15   specifically created to communicate with the Foley family, just

16   as they created an email address specifically to address -- to

17   write to all the other American victim families.  And the same

18   email address would be used to communicate with the victim

19   families throughout their negotiation process.

20       As reflected in Paragraph 24 of the Statement of Facts,

21   Your Honor, the organization said:  "James Wright Foley is being

22   detained by us.  James was detained whilst operating as a,

23   quote, 'journalist.'"  A common characteristic, Your Honor,

24   throughout all of the ransom emails for all the victims is the

25   clear English that is used, also frequent use of British idioms

1    and things unique to the British dialect.

2           Also on the December 2nd, 2013, email sent by the

3    Islamic State to the family of James Foley, the organization

4    wrote:  "Our Muslim prisoners are extremely valuable to us, for

5    verily those who are honored most are those who surrender

6    themselves to the creator."  They asked for and demanded for the

7    Foley family, "to influence and pressure the government to

8    release our Muslim prisoners who they have imprisoned, whether

9    innocent or guilty, according to your laws."

10          Your Honor, also reflected in the Statement of Facts,

11   there is a reference at the end of the negotiation period with

12   the Foley family on August 12th, one week prior to his murder.

13   The Islamic State stated:  "We have also offered prisoner

14   exchanges to free the Muslims currently in your detention, like

15   our sister, Dr. Aafia Siddiqui."

16          Your Honor, the references to Aafia Siddiqui would also

17   appear prominently in the ransom emails to Kayla Jean Mueller.

18   I mentioned earlier that electronic devices were seized

19   associated with the defendant upon his arrest on September 11th

20   of 2011.  In addition, British law enforcement engaged in search

21   warrants after he left his mother's home, where they seized his

22   laptop computer.  On both electronic devices there were numerous

23   references to Dr. Aafia Siddiqui.

24          Your Honor, in addition, again, all of the victim

25   families received ransom emails on, for instance, as set forth

1    in the Statement of Facts in Paragraph 25, the Islamic State

2    says:  "We demand, in return for Steven's release, the release

3    of all of our Muslim prisoners who have been detained directly

4    or indirectly by your government."

5             As reflected in Paragraph 26, Your Honor, with respect

6    to Peter Kassig, again, there's use of British idioms.  They

7    also state:  "Use your influence, or we" -- "primarily that you

8    influence your government however you can to release our Muslim

9    prisoners in exchange for Peter."

10            And then as already mentioned, Your Honor, in the

11   Kayla Mueller ransom emails, there are numerous references to

12   releasing Muslim prisoners, including Aafia Siddiqui.  In

13   addition, Your Honor, as reflected in Paragraph 27 of the

14   Statement of Facts, in one of the ransom demand emails to the

15   family of Kayla Mueller, Islamic State wrote:  "This is

16   non-negotiable, as it is more beloved to us to put a bullet in

17   her head than release her for anything less."

18            Your Honor, the four American citizens were never

19   released by the Islamic State.  James Foley was murdered by

20   Mohammed Emwazi on or about August 19th of 2014.  He was

21   murdered.  His murder was captured in an ISIS propaganda video

22   called "A Message to America," and Mr. Foley was beheaded in

23   that video.

24            Your Honor, there were several subsequent videos

25   released by the Islamic State in the ensuing two or three months

1    that show, likewise, graphic murder scenes of American, British,

2    and Japanese citizens.

3           On September 2nd of 2014, seven years ago today,

4    Steven Sotloff appeared in an ISIS propaganda video called "A

5    Second Message to America.  He was beheaded by Mohammed Emwazi.

6    At the end of that video, a British citizen by the name of

7    David Haines appears.  Subsequently, within a couple of weeks,

8    Mr. Haines is then beheaded in another ISIS video.  Alan Henning

9    was also beheaded.

10          Your Honor, in November of 2014, ISIS released a longer

11   propaganda video called, "Although the Disbelievers Dislike It."

12   It is a particularly gruesome video that shows the murder of

13   Syrian citizens.  At the very end of that video, Mohammed Emwazi

14   appears, and he proceeds to make his typical Anti-Western

15   Jihadist speech to the camera.  Notably, Your Honor, he is in

16   Dabiq, Syria.  In ISIS morphology, Dabiq is where the ultimate

17   battle between the West and Islam will occur.  At the conclusion

18   of Emwazi's speech, the lifeless head of Peter Kassig appears.

19          Your Honor, during that time, Kayla Mueller had been

20   moved from a hostage-taking cell to the captivity of another

21   senior ISIS leader by the name of Abu Sayyaf and his wife,

22   Umm Sayyaf.  She was forcibly detained against her will.  She

23   was detained with other young females, primarily of the Yazidi

24   faith.  While in the captivity of the Sayyaf family,

25   Abu Bakr al-Baghdadi would visit that home, and essentially

1    Ms. Mueller was committed to sexual slavery with the leader of

2    the Islamic State.

3            In February of 2015, the Islamic State released on

4    Twitter a notification that Ms. Mueller had been killed.  The

5    following day, they sent an email to the same ransom email

6    address that they were using to negotiate with the Mueller

7    family.  They sent notification that in fact Ms. Mueller had

8    been killed, and they sent photographs of a lifeless

9    Kayla Mueller.

10           In substantial part, Your Honor, that would be the

11   government's evidence in the case.  Thank you.

12           THE COURT:  All right.  Mr. Kotey, return to the

13   podium, please, sir.

14           Mr. Kotey, does that recitation of facts by the

15   prosecutor, Mr. Fitzpatrick, true and accurate in all respects?

16           THE DEFENDANT:  I've signed a Statement of Facts, and I

17   accept the wording that is in the Statement of Facts.

18           THE COURT:  All right.

19           THE DEFENDANT:  So wherever, if in any circumstance he

20   may have deviated from the Statement of Facts, then that is from

21   himself, and we have not -- we have not sat down and discussed

22   any of the details of the indictment, or my involvement, or of

23   the facts themselves.

24           THE COURT:  Did you participate in the hostage taking

25   of the four American hostages?

1              THE DEFENDANT:  Sorry?

2              THE COURT:  Did you participate in the conspiracy to

3    take four American hostages?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And you know that their hostage taking,

6    they were ill-treated and ultimately beheaded?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And you knew that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And you knew that that was the likely

11   result of their being held as hostages and ransom demands being

12   made?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Is that right?

15             THE DEFENDANT:  That's correct.

16             THE COURT:  All right.  Mr. Kotey, how do you now plead

17   to the charge against you in Count 1; that is, conspiracy to

18   commit hostage taking resulting in death?  Do you plead guilty

19   or not guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  The Court, in the case of United States

22   against Alexanda Amon Kotey, finds that the defendant is fully

23   competent and capable of entering an informed plea and that your

24   plea of guilty to Count 1 of the indictment is knowing and

25   voluntary.  And, accordingly, the government finds you guilty of

1    conspiracy to commit hostage taking resulting in death.

2          Now, Mr. Kotey, how do you plead to Count 2 of the

3    indictment; that is, the charge against you of hostage taking

4    resulting in the death of James Wright Foley?  Do you plead

5    guilty or not guilty?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  The Court, in the case of United States

8    against Alexanda Amon Kotey, how do you plead to the charge

9    against you in Count 2 of the indictment, hostage taking

10   resulting in the death of James Wright Foley?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  The Court, in the case of United States

13   against Alexanda Amon Kotey, finds that the defendant is fully

14   competent and capable of entering an informed plea, that your

15   plea of guilty is a knowing and a voluntary plea, and that it is

16   supported by an independent basis in fact containing each of the

17   elements of the offense charged in Count 2.  And, accordingly,

18   the Court finds you guilty of hostage taking resulting in the

19   death of James Wright Foley.

20         Now, Mr. Kotey, how do you plead to the charge against

21   you in Count; 3, that is, the charge of hostage taking resulting

22   in the death of Kayla Jean Mueller?  Do you plead guilty or not

23   guilty?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  All right.  Again, the Court, in the case

```
 1   of United States against Alexanda Amon Kotey, finds that the
 2   defendant is fully competent and capable of entering an informed
 3   plea, that your plea of guilty to Count 3 of the indictment is a
 4   knowing and a voluntary plea.  And, accordingly, the Court
 5   accepts your plea and adjudges you now guilty of hostage taking
 6   resulting in the death of Kayla Jean Mueller.
 7           Now, Mr. Kotey, how do you plead to the charge against
 8   you in Count 4, hostage taking resulting in death of
 9   Steven Joel Sotloff?  Do you plead guilty or not guilty?
10           THE DEFENDANT:  Guilty.
11           THE COURT:  The Court, in the case of United States
12   against Alexanda Amon Kotey, finds that the defendant is fully
13   competent and capable of entering an informed plea, that your
14   plea of guilty is knowing and voluntary, and that it is
15   supported by an independent basis in fact containing each of the
16   elements of the offense alleged against you in Count 4.
17   Accordingly, the Court accepts your plea and adjudges you now
18   guilty of hostage taking resulting in the death of
19   Steven Joel Sotloff.
20           Now, Mr. Kotey, how do you plead to the charge against
21   you in Count 5, namely hostage taking resulting in the death of
22   Peter Edward Kassig?  Do you plead guilty or not guilty?
23           THE DEFENDANT:  Guilty.
24           THE COURT:  The Court, in the case of United States
25   against Alexanda Amon Kotey, finds that the defendant is fully
```

1    competent and capable of entering an informed plea, that your

2    plea of guilty is knowing and voluntary, and that it is

3    supported by an independent basis in fact containing each of the

4    elements of the offense charged against you in Count 5.

5    Accordingly, the Court accepts your plea and adjudges you now

6    guilty of hostage taking resulting in the death of

7    Peter Edward Kassig.

8              Next, Mr. Kotey, how do you now plead to the charge

9    against you in Count 6 of the indictment; that is, a conspiracy

10   to commit murder of United States citizens outside of the

11   United States?  Do you plead guilty or not guilty to the charge

12   in Count 6?

13             THE DEFENDANT:  Guilty.

14             THE COURT:  The Court, in the case of United States

15   against Alexanda Amon Kotey, finds that the defendant is fully

16   competent and capable of entering an informed plea, and that

17   your plea of guilty to Count 6 of the indictment is a knowing

18   and a voluntary plea, and that it is supported by an independent

19   basis in fact containing each of the elements of that charge.

20   And, accordingly, the Court accepts your plea and adjudges you

21   now guilty of engaging in a conspiracy to murder United States

22   citizens outside of the United States.

23             Now, Mr. Kotey, how do you now plead to the charge

24   against you in Count 7 of the indictment; that is, conspiracy,

25   engaging in a conspiracy to provide material support or

1    resources to terrorists, namely hostage taking and murder,

2    resulting in death?  Do you plead guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  The Court, in the case of United States

5    against Alexanda Amon Kotey, finds that the defendant is fully

6    competent and capable of entering an informed plea, that your

7    plea in Count 7 to the indictment is knowing and voluntary and

8    supported by an independent basis in fact.  And, accordingly,

9    the Court finds you guilty of engaging in a conspiracy to

10   provide material support to terrorists, hostage taking, and

11   murder, resulting in death.

12         Now, Mr. Kotey, how do you now plead to the charge

13   against you in Count 8; that is, conspiracy to provide material

14   support or resources to a designated foreign terrorist

15   organization resulting in the death?  Do you plead guilty or not

16   guilty?

17         THE DEFENDANT:  Guilty.

18         THE COURT:  The Court, in the case of United States

19   against Alexanda Amon Kotey, finds that the defendant is fully

20   competent and capable of entering an informed plea, that your

21   plea of guilty is knowing and voluntary; that is, to Count 8.

22   And, accordingly, the Court accepts your plea and adjudges you

23   now guilty of that charge, namely conspiracy to provide material

24   support or resources to designated foreign terrorist

25   organization, resulting in death.

1          Now, Mr. Kotey, the Court will order the preparation of

2    a presentence investigation report.  This is a vitally important

3    document because it's a document on which the Court will chiefly

4    rely in imposing an appropriate sentence.  So you need to pay

5    careful attention to the preparation of this document, and

6    indeed you have a role to play in its preparation.

7          You will be asked by a probation officer to provide

8    information so that the report can be prepared.  You'll be asked

9    to provide information about your family, your background, your

10   education, your health and financial conditions, and other

11   facts.  And you may have your counsel with you when you provide

12   that information to the probation office, and you may also, of

13   course, have an interpreter.  But you made quite clear that your

14   English is entirely fluent.  Indeed, it sounds to me like, as

15   you say, you really were educated in England.

16          THE DEFENDANT:  Yes.

17          THE COURT:  And so you have no difficulty whatever in

18   English.

19          But when the report is completed, you'll be given a

20   copy.  So will your lawyers.  You'll have an opportunity to

21   review it with them and then to call to the Court's attention

22   any objections or any corrections you think should be made to

23   the report.  The government will also have an opportunity to

24   register its objections or corrections.  And if you dispute

25   those offered by the government or the government disputes those

1    that you assert, then the Court will hold a hearing, and I will

2    resolve any disputes at this hearing before imposing sentence.

3         At the time of sentencing, Mr. Kotey, you'll have the

4    right to address the Court to say anything at all you wish to

5    the Court by way of extenuation or mitigation, or indeed

6    anything you think the Court should know before sentence is

7    imposed.  You won't be required to address the Court, and you've

8    already addressed the Court to a substantial extent today.  But

9    you'll have that opportunity at the time of sentencing.

10        And, of course, your counsel, one of your counsel, will

11   have an opportunity to address the Court on your behalf.  Not

12   all of them.

13        I will set sentencing --

14        MS. MERTZ:  Your Honor, if I may, the parties have

15   discussed sentencing dates.  I think both parties are in some

16   agreement that this sentencing may take longer than usual to

17   prepare for both sides.

18        THE COURT:  I don't think it would take longer than the

19   4th of February, do you?

20        MS. MERTZ:  Your Honor, we had discussed March 3rd,

21   although I think both parties are available --

22        THE COURT:  All right.  I'll accommodate that.  He's

23   incarcerated.  March 3rd.

24        MS. MERTZ:  Thank you, Your Honor.

25        MR. FITZPATRICK:  Just a note, Your Honor.  We asked

```
 1    for a Thursday because we anticipate it may be a longer
 2    sentencing than usual.  So March 3rd is a Thursday.
 3              THE COURT:  Oh, I see.  Well, no, it will be March 4th,
 4    and I'll ensure there's plenty of time.
 5              MR. FITZPATRICK:  Thank you, Your Honor.
 6              THE COURT:  I'm not here all day every Thursday unless
 7    I'm in a trial.
 8              MR. FITZPATRICK:  I understand, Your Honor.
 9              THE COURT:  All right.  Anything further to be
10    accomplished in this matter today?
11              MR. FITZPATRICK:  No, Your Honor.  Thank you.
12              THE COURT:  On behalf of the defendant, Ms. Mertz?
13              MS. MERTZ:  No, Your Honor.  Thank you.
14              THE COURT:  The families of the victims are here.  I've
15    set the sentencing.  At the time of the sentencing, each family
16    will have the right to address the Court at that time.  I'll
17    hear from all of you or just one of the four.  It doesn't
18    matter.  You all have -- you each have the right to address the
19    Court, and you will be fully heard at that time.
20              If you have any questions, you should address those to
21    Mr. Fitzpatrick.  It is important that this hearing be on the
22    public record.  There will be a transcript available at some
23    point in time, and you're perfectly entitled to request a copy
24    of that transcript, which you should do through Mr. Fitzpatrick.
25    And if you have any questions, you should address those to
```

75

1    Mr. Fitzpatrick.

2         All right.  Anything further in this matter today from,

3    let me ask once again, from the government?

4         MR. FITZPATRICK:  No, Your Honor.  Thank you.

5         THE COURT:  From the defendant, Ms. Mertz?

6         MS. MERTZ:  No, Your Honor.

7         THE COURT:  All right.  I thank counsel for your

8    cooperation, and I will see this matter again, what date did I

9    say, March 4th.

10        MR. FITZPATRICK:  Correct, Your Honor.

11        THE COURT:  March 4.  And I'll set it for March 4th --

12   let me set it for March 4th at 1 p.m.

13        MR. FITZPATRICK:  Thank you, Your Honor.

14        THE COURT:  And I will devote the afternoon to it, if

15   needed.

16        All right.  I thank counsel, and Court will stand in

17   recess until tomorrow morning at 9 o'clock.

18        (Off the record at 7:24 p.m.)

19

20

21

22

23

24

25

76

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3            I, Rebecca Stonestreet, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    ____//Rebecca Stonestreet//____              __10/4/21____

10   SIGNATURE OF COURT REPORTER                  DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25