**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20CR239-2 |
| v. | Honorable T.S. Ellis, III |
| EL SHAFEE ELSHEIKH, *Defendant*. | Trial: March 29, 2022 |

**DEFENDANT'S BENCH MEMORANDUM
REGARDING ADMISSIBILITY OF DEFENDANT'S MEDIA STATEMENTS
UNDER THE FED. R. EVID. 106, 801 and 803**

El Shafee Elsheikh, by counsel, submits this Bench Memorandum concerning the admissibility of certain portions of media interviews, in which Mr. Elsheikh was a participant, made while he was held in SDF custody in 2018 and 2019.  Specifically, Mr. Elsheikh addresses the applicability of the rule of completeness, codified at Fed. R. Evid. 106, and other applicable hearsay rules to the facts of this case.

The undersigned has conferred with counsel for the government, who does not contest that the video clips that Mr. Elsheikh seeks to admit, which come from media interviews he gave in 2018 and 2019, are authentic and that a proper foundation has already been established for their admission under Fed. R. Evid. 901.  The government has informed counsel that its only objection to the defendant's exhibits of his various media interviews is on hearsay grounds.  In support of the admission of defendant's exhibits, Mr. Elsheikh states as follows:

**DISCUSSION**

As this Court is aware, Mr. Elsheikh participated in several videotaped media interviews while in SDF custody.  Several of these interviews took place between March and August 2018.  During these media interviews, Mr. Elsheikh said nothing about his involvement in the hostage-

1

taking conspiracy alleged in the Indictment.  Then in 2019, Mr. Elsheikh participated in at least four additional interviews with various media outlets, while still in SDF custody.[1]  During the 2019 interviews, Mr. Elsheikh acknowledged his involvement with Western hostages captured by ISIS but denied that he took part in any physical abuse of the hostages and denied knowing any details about the deaths of certain other hostages.  The substance and tenor of the 2018 and 2019 media interviews and his physical appearance stand in stark contrast to one another; and though this Court denied the defendant's motion to suppress the later 2019 interviews on the basis of involuntariness, it nevertheless held that its decision did not bar the defendant from arguing his statements have little or no weight. Dkt. 188, p. 30 Note 34.

The government has admitted and played nineteen segments from the 2019 Sean Langan interview, seven segments from various media interviews in 2018, and four segments from a 2019 media interview with the Washington post.  Notably, the government has not introduced any of Mr. Elsheikh's *first* 2019 media interview, conducted in June 2019 with a journalist from CNN, where *for the first time*, Mr. Elsheikh "admits" his involvement with the hostage-taking scheme.  When asked by the CNN interviewer why he was admitting involvement with the hostages after previously denying any involvement in the hostage scheme in the earlier interviews, Elsheikh responds by saying "everything has changed…enough is enough, I just want to go back to a normal life, I just want this to be over, I think it is enough."  The CNN interviewer also questions whether Mr. Elsheikh had decided to admit involvement with the hostage taking scheme because French ISIS fighters who had been captured in Syria had been sentenced to death in Iraq.

---

[1] The 2019 media interviews were the subject of Mr. Elsheikh's motion to Suppress, (Dkt. 100; 101; 141), challenging the voluntariness of these interviews, and the Court's subsequent opinion denying the same—after a three-day evidentiary hearing.  Dkt. 188.

Separately, the government's Sean Langan interview clips focus primarily on Mr. Elsheikh's purported interactions with Mohammad Emwazi and certain of the hostages while they were held in captivity.[2]  Dkt. 249, p.23-25.  However, purposefully missing from any of the government's Langan clips are Langan's repeated references to the French Nationals sentenced to death in Iraq and the possibility that Mr. Elsheikh would face a similar Iraqi criminal trial. Indeed, during the Langan interview, the interviewer confronts Elsheikh about why he was not being more forthcoming in his media interviews.[3]  In an attempt to force Mr. Elsheikh to "open-up" during his interview, Mr. Langan repeatedly implies that unless Mr. Elsheikh is more forthcoming in his responses regarding his involvement in the hostage-taking scheme, there is a real possibility that he (Elsheikh) could be sent to Iraq for a ten-minute trial and then executed.

Mr. Elsheikh intends to offer four short video clips from his various media interview— three from the Sean Langan Interview, and one from the 2019 CNN interview—to fill-in the intentional gaps in the government's evidence, provide context to the media clips that government has already admitted and played for the jury, and to ensure that a misleading impression created by taking matters out of context is corrected

### A.  *Rule of Completeness—Fed. R. 106*

Federal Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--*or any other writing or recorded statement*--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. (emphasis added).  The origins of Rule 106 go back to the sixteenth century.

---

[2] The Government contends that Mohammad Emwazi was the individual dubbed "Jihadi John," the member of the so-called ISIS "Beatles" responsible for executing some of the hostages.

[3] *Supra* Note 2, Exs. 15, 16, 17, 18.

*Rule of Completeness*, 1 Wharton's Criminal Evidence § 4:10 (15th ed.).  The purpose of the original common law doctrine was to ensure that a misleading impression created by taking matters out of context is corrected because of the inadequacy of delaying the correction to a point later in the trial.  *Id*.  Likewise, the purpose of Fed. R. Evid 106 is "to prevent a party from misleading the jury by allowing into the record relevant portions of [a writing or recorded statement] which clarify or explain the part already received."  *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir.1996).  The rule in both its forms is protective and functions as a defensive shield against potentially misleading evidence proffered by an opposing party.  *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004).

Despite the Rule's codification, post-rules cases continue to cite cases decided before the Federal Rules of Evidence were enacted—as with the common-law rule of completeness that allowed the introduction of otherwise inadmissible hearsay to give proper context to incomplete and misleading evidence offered by the original proponent.  See e.g., *United States v. Bailey*, 2017 WL 5126163 at *3 (D. Md., Nov. 06, 2017); *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986); *United States v. Harvey*, 653 F.3d 388, 394–95 (6th Cir. 2011); *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988).

Though some of Mr. Elsheikh's statements in the various media clips would otherwise be considered inadmissible hearsay when considered in-light of Rule 106, they are independently admissible.

Alternatively, the proffered media clips are otherwise admissible under several of the hearsay exceptions.

4

### i.)      *Mr. Elsheikh's Media Interviews Are Independently Admissible*

Federal Rule of Evidence 106 provides:

"If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."

Before the codification of Rule 106, in this Circuit, when part of a defendant's post-arrest statement was introduced into evidence at trial, the defendant had the right to have his entire statement introduced:

"When a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; and if the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time which bears upon the subject of controversy including any exculpatory or self-serving declarations connected therewith… As an outgrowth of this and founded on the same reasoning it has been held *improper to admit a confession* which, after admitting the commission of the criminal act, is interrupted thereby *preventing the defendant from adding anything which might explain the reason for his conduct* or serve to condone it"

*United States v. Wenzel*, 311 F.2d 164, 168-69 (4th Cir. 1962) (emphasis added).

However, codification of Rule 106 did not end the ability for otherwise inadmissible hearsay to be admitted at trial.  See *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988) ("The cross-designated portions, while perhaps not admissible standing alone, are admissible as a remainder of a recorded statement. [Rule] 106 allows an adverse party to introduce any other part of a writing or recorded statement which ought in fairness be considered contemporaneously. The rule simply speaks the obvious notion that parties should not be able to lift selected portions out of context.").[4]

---

[4] *But see United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (government was entitled to introduce the defendant's inculpatory statements as admissions under Rule 801(d)(2)(A), but that the defendant could not introduce exculpatory portions under Rule 106 because they would be inadmissible hearsay).

In the absence of guidance from the Rule or the Advisory Committee Notes regarding the independent admissibility of statements under Rule 106, the district court in *United States v. Bailey* undertook an exhaustive analysis of the rule which should serve as a blueprint for this Court's analysis. See *United States v. Bailey*, 2017 WL 5126163 (D. Md. Nov. 6, 2017). In *Bailey* the district court examined numerous federal cases, including *United States v. Wilkerson*, where the respective courts held that if evidence is inadmissible under the hearsay rules it is not otherwise independently admissible under Fed. R. Evid. 106.[5] The *Bailey* court concluded after its exhaustive analysis that in the numerous cases it examined, the underlying courts were too quick to restrict Rule 106 to evidence that is independently admissible without any consideration of the common-law history of the doctrine of completeness, and its purpose to guard against abuses of the adversary system, or the harm that can result from letting the government have an unfair advantage over the defendant by creating a misleading impression in the minds of the jury that is, as a practical matter, uncorrectable. *Bailey*, 2017 WL 5126163, at \*5. In particular, the court took note of *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986), a D.C. Circuit case that rejected the notion that only admissible evidence could be used to complete the record under Rule 106. In *Sutton*, the D.C. Circuit stated:

> "Rule 106 explicitly changes the normal order of proof in requiring that ... evidence [within the scope of the Rule] must be 'considered contemporaneously' with the evidence already admitted. Whether Rule 106 concerns the substance of evidence, however, is a more difficult matter. The structure of the Federal Rules of Evidence indicates that Rule 106 is concerned with more than merely the order of proof. Rule 106 is found not in Rule 611, which governs the 'Mode and Order of Interrogation and Presentation,' but in Article I, which contains rules that generally restrict the manner of applying the exclusionary rules. See C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5078, at 376 (1977 & 1986 Supp.). Moreover, every major rule of exclusion in the Federal Rules of Evidence contains the proviso, 'except as otherwise provided by these rules,' which

---

[5] See e.g., *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (quoting *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996).

6

indicates "that the draftsmen knew of the need to provide for relationships between rules and were familiar with a techniques for doing this." Id. There is no such proviso in Rule 106, which indicates that Rule 106 should not be so restrictively construed.

Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court"

*Id. at* 1368.

As regards the "fairness" prong of Fed. R. Evid 106, the Seventh Circuit has identified a four-part test that the proponent of the proffered evidence must show to be admissible under the rule:

"Once relevance has been established, the trial court then must address the second half of the test, and should do so by asking (1) does it explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all of the evidence."

*United States v. Velasco*, 953 F.2d 1467, 1475 (7th Cir. 1992).

On balance, the weight of these factors strongly favors admitting the proffered portions of Mr. Elsheikh's media interviews.

Mr. Elsheikh intends to introduce one short clip from his first interview in 2019, which took place with CNN reporter, Nick Paton Walsh. See Defendant's Exhibit 9.[6]  The importance of this interview cannot be understated; it is during the 2019 CNN interview that Mr. Elsheikh first admitted his participation in the hostage-taking scheme. As shown in defendant's Exhibit 9, Mr. Walsh asks Mr. ElSheikh what has changed since 2018, when he refused to speak about the hostage taking scheme.  Mr. Elsheikh responds by stating that "everything has changed, [] a lot has changed, [] It's just enough is enough. I just want to, just, go back to a normal life.  I just

---

[6] See Transcript at Exhibit 9A

want this to be over.  I think it's enough." Defendant Ex. 9A.[7]  Later, Mr. Walsh states that the only reason why Mr. Elsheikh is admitting his involvement now is for "your own self-preservation. That you know that French nationals have been sentenced to death in Iraq…" Defendant Ex. 9A.[8]  At the end of the clip, Mr. Walsh asks whether Mr. Elsheikh has been kept in good condition while in SDF custody, and Mr. Elsheikh does not respond besides giving a prayer.[9]  *Id.* This statements places into context all of Mr. Elsheikh's later 2019 media interviews.  Clearly, the jury should consider Mr. Elsheikh's fear about being sent to Iraq to face death when they consider what weight and credibility, they choose to ascribe to any of his 2019 media interviews.

Similarly, defendant's Exhibits 2, 3, and 5 are excerpts from Mr. Elsheikh's 2019 interview with Sean Langan—whose interview is the subject of government's exhibit 26-1 through 26-19a.  The three segments of the interview Mr. Elsheikh seeks to introduce focus on Mr. Langan's repeated questions that implied Mr. Elsheikh would face a summary trial in Iraq,

---

[7] Mr. Elsheikh's statements during the 2019 CNN interview are also admissible under Fed. R. Evid. 803 (3)—Then existing mental, emotional, or physical condition.  Mr. Elsheikh's statements are clearly statements of his "then-existing state of mind," i.e., his motive or intent behind giving the incriminatory statements. The interviewer's statements too are admissible as they are not offered for the truth of the matter asserted, rather, for their effect on Mr. Elsheikh. See *United States v. Guerrero-Damian*, 241 Fed. Appx. 171, 173 (4th Cir. 2007) ("A statement is not hearsay if it is offered to prove knowledge or show the effect on the listener or listener's state of mind").

[8] Mr. Walsh's questions to Elsheikh are independently admissible. See *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (citing cases from the Second, Fifth, Seventh, and Tenth Circuits) ("A question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion"). Alternatively, Mr. Walsh's statement is not being offered for its' truth, but rather its' effect on Mr. Elsheikh's state of mind. See *United States v. Guerrero-Damian*, 241 Fed. Appx. 171, 173 (4th Cir. 2007).

[9] Again, Mr. Walsh's question is not considered hearsay and Mr. Elsheikh's response is admissible as non-hearsay evidence of his state of mind.

followed by a quick execution, unless Mr. Elsheikh "opened-up" about his involvement.[10]

Indeed, within the first 20 minutes of his interview, Mr. Langan brings up the prospects of an

Iraqi trial:

> El Sheikh: There was a big, big change in direction . . .
>
> Langan: And it looks like now, the West, whether it's a deal or an agreement, but they're sending Western ISIS fighters from Syrian cells, here in prison, to Court in Iraq.
>
> El Sheikh: There's been more than these French ones, or . . . ?
>
> Langan: There, there, were local fighters, I think, I didn't make it, it was in the Times report, 50 or 100, yeah. Quite a large number, but I think it was the foreign fighters, the French were the first.
>
> El Sheikh: I think they were the ones who got sent, those 200 and something, was Iraqi citizens, amongst them were eight French.
>
> Langan: Yeah. Okay. But it looks like now, that could be potentially where you will go, that could be part of your . . .
>
> El Sheikh: We spoke to somebody, from CNN, and he did mention that. He said that you just coming out and saying this now, because you are scared of going to Iraq.
>
> Langan: No, he actually said you were scared of going to the America. And I was thinking that would be the least of my fears . . .
> El Sheikh: My response to him, a confession maybe would even speed that process up.
>
> Langan: Yeah
>
> El Sheikh: So if that makes sense . . . why would I be scared to go to go to America.
>
> Langan: No, I think he made a mistake, he said America, that's why you reacted to America.
>
> El Sheikh: Yeah, he did say Iraq, after, though, yeah.

---

[10] Mr. Langan's questions to Elsheikh are independently admissible. See *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (citing cases from the Second, Fifth, Seventh, and Tenth Circuits) ("A question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion"). Alternatively, Mr. Langan's statements to Mr. Elsheikh are admissible as not for their truth, but for their effect on Mr. Elsheikh's state of mind. See *United States v. Guerrero-Damian*, 241 Fed. Appx. 171, 173 (4th Cir. 2007).

Defendant's Exhibit 2A.

Mr. Langan persists in raising the specter of an Iraqi trial, when towards the middle of the interview Langan again implies that Mr. Elsheikh will be following the French ISIS prisoners in being sent to Iraq for trial—unless he is more open during his media interviews:

> Langan: Cause you're probably thinking I'm talking bullshit. But I think now, when I read back that French thing, that you are probably on your way, they're certainly someone's thinking about sending you to Iraq for trial. Uh . . . I follow, . . . this TV film, its, its . . . it's not about you, it doesn't matter if you tell me stuff or don't tell me stuff, the right to a fair trial is regardless of you and I sitting here.  I do think it's up to you to think if this is time, and the reason I'm saying this, is I got the impression from your last interviews, that's part of your process, that you were thinking, this is now the time. I've talked too much, I'm sorry, I'm supposed to be interviewing you.

> El Shiekh: That's alright.

Defendant's Exhibit 3A.[11]  Finally, towards the end of his Interview Mr. Langan states that time is running out for Mr. Elsheikh, and that the prospect of going to Iraq to face a ten-minute trial execution is looming:

> El Sheikh: He said, some of the, some of the, punishments, some of the violence, the transgression. I call it transgression, yeah . . .

> Langan: Yeah, yeah, Okay, can you give me a bit more about what you call transgression, can you tell me more about that? I know you find it unpleasant. I'm only asking because I think, uh . . .

> El Sheikh: [unintelligible]

> Langan: The families need to know.

> El Sheikh: I mean, those people who watch, they might say why is he reluctant to speak…

> Langan: Yeah, yeah.

> El Sheikh: Maybe at another time, it would be more apparent why I'm reluctant to talk too much about that.

---

[11] *Supra* Note 11.

Langan: Can you explain that to me, cause, I don't understand, cause I was thinking, I don't understand your justice, or you just don't seem to care whether you're going to be shipped off Bagdad or not . . .

El Sheikh: It's not like that.

Langan: Is it, okay, one would be your present situation, that maybe makes it immediate…

El Sheikh: It makes it very, very difficult to speak about it, talk about.

Langan: But they know. There's nothing you're going to say to me now that . . .

El Shiekh: I'm not talking officially. I'm not talking about anything official.

Langan: You talking about ISIS, is ISIS threatening you?

El Sheikh: No. no.

Langan: ISIS prisoners? Okay.

El Sheikh: It's just. Maybe at a later time, it will be more.

Langan: When is that time, Shafee?

El Sheikh: When I'm not here.

Langan: Where are you going off after here, do you think?

El Sheikh: [unintelligible] shaking his head

Langan: Where do you think you're going?

El Sheikh: Where do I think? It looks like where the French went. But I wasn't going to say anything about what Nick said, and other people have said.

Langan: Yeah, Bagdad.

El Sheikh: Do I feel?

Langan: No, no, I mean. Bagdad? Yeah, what do you feel? Yeah, I was just pointing out they went to Bagdad for a ten minute trial.

El Sheikh: Yeah, I don't know, to be honest with you. I don't have a clue.

Langan: But the reason why I'm asking that is, uh, you might have to take some risks and say things you wouldn't want to say, perhaps. Now isn't the time to be holding stuff back.

Defendant Ex. 5A.[12]

The CNN and Langan media clips are necessary to guard against the harm that can result from letting the government have an unfair advantage over the defendant "by creating a misleading impression in the minds of the jury that is, as a practical matter, uncorrectable." *Bailey*, 2017 WL 5126163, at *5. The media clips are also necessary to put the government's evidence into context, avoid misleading the trier of fact, and to insure a fair and impartial understanding of all of the evidence–particularly in light of the fact that Special Agent Chiapponne did not watch the entire video and could not answer questions about the execution of the French ISIS prisoners. See *United States v. Velasco*, 953 F.2d at 1475. Mr. Elsheikh's exhibits are necessary to allow the jury to weigh the weight and credibility of his purported admissions, by examining them in the context in which they were given—namely, that Mr. Elsheikh believed that unless he gave incriminatory statements, he faced the real possibility of an Iraqi execution.[13] Moreover, excluding these statements will prevent the jury from properly determining what weight and credibility to ascribe to the incriminatory statements.

The Rule of Completeness "operates to ensure that "when one party has made use of a portion of a [statement], such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completion is *ipso facto* relevant and therefore admissible." *United States v. Ellis*, 121 F.3d 908, 921 (4th Cir. 1997) (internal citations omitted). As such, given that the only admissions by Mr. Elsheikh that the government seeks to

---

[12] Mr. Langan's question is not considered hearsay and Mr. Elsheikh's response is admissible as non-hearsay evidence of his state of mind.

[13] Separately, Mr. Elsheikh's statements during the Sean Langan interview are also admissible under Fed. R. Evid. 803 (3)—Then existing mental, emotional, or physical condition. Mr. Elsheikh's statements are clearly statements of his "then-existing state of mind," i.e., his motive or intend behind giving the incriminatory statements.

introduced are those given to various news outlets, evidence which bears on the weight and credibility of Mr. Elsheikh's admissions should be admissible during the defendant's case-in-chief.

**B.** ***Exclusion Of Defendant's Interview Segments Would Violate Mr. Elsheikh's Due Process Right To Present An Effective Defense.***

Admittedly, the right to present relevant evidence is not unlimited and must occasionally "'bow to accommodate other legitimate interests in the criminal trial process.'"  See *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. at 295); accord, *Michigan v. Lucas*, 500 U.S. 145, 149 (1991).  But restrictions on a defendant's right to present a defense may not be arbitrary or disproportionate to the purposes they are designed to serve.  *Rock*, 483 U.S. at 56; *Lucas*, 500 U.S. at 151.

These precepts rest on the premises that, in plain terms, the right to present a defense is a fundamental element of due process of law.  Consistent with this principle, the Supreme Court in *Scheffer* held that a state rule of evidence that excluded "whole categories" of testimony on the basis of a presumption of unreliability was unconstitutional. 523 U.S. at 326–27.  Thus, over the years, with respect to category after category, strict rules of exclusion have been replaced by rules that broaden the discretion of trial judges to admit potentially unreliable evidence and to allow properly instructed juries to evaluate its weight.   See *Id*. at 328.

More recently, in *Holmes v. South Carolina*, 547 U.S. 319, 321 (2006) the Court considered whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict. Pointedly, in *Holmes*, the Court held:

13

"A criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce evidence of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308. This latitude, however, has limits. "*Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.*' " *Crane v. Kentucky*, 476 U.S. 683, 690. This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are " 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Scheffer*, supra, at 308." (emphasis added).

547 U.S. at 324-25 (2006).

Taken together, these cases stand for the basic principle that due process demands that a criminal defendant be afforded a fair opportunity to defend against the government's accusations. Meaningful adversarial testing of the Government's case requires that Mr. Elsheikh not be prevented from raising a defense, which includes the right to present relevant, probative evidence. In the absence of a valid governmental interest, exclusion of Mr. Elsheikh's statements regarding his state of mind, in interviews that the government admits are authentic, will deprive him of the fundamental right to a fair trial.

## CONCLUSION

For the aforementioned reasons, Mr. Elsheikh's above referenced interview segments should be admitted in the defendant's case-in-chief.

Respectfully Submitted,

EL SHAFEE ELSHEIKH,
By Counsel
_____/s/_____
Nina J. Ginsberg, VSB # 19472
Zachary A. Deubler, VSB # 90669
DiMuroGinsberg, P.C.
(703) 684-4333 (T)
nginsberg@dimuro.com
zdeubler@dimuro.com

14

_____/s/_____
Edward B. MacMahon, Jr., VSB # 25432
Law Offices of Edward B. MacMahon, Jr.
P.O. Box 25
107 East Washington Street
Middleburg, VA 20188
(540) 687-3902 (T)
ebmjr@macmahon-law.com

_____/s/_____
Yancey Ellis, VSB #70970
Carmichael Ellis & Brock, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
yancey@carmichaellegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April 2022, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

_____/s/_____
Zachary A. Deubler, Esq.

15