IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:20-cr-239 |
| | ) | |
| ALEXANDA AMON KOTEY, | ) | Hon. T. S. Ellis, III |
| | ) | |
| *Defendant*. | ) | Sentencing Hearing: April 29, 2022 |

## **UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

"The world needs to know the plight of the little people who are walked upon like grass. … If you don't have moral courage, you don't have journalism."
- James Wright Foley on moral courage.

"I remember Mom always telling me that all in all and in the end the only one you really have is God.  I have come to a place in this experience where, in every sense of the word, I have surrendered myself to our Creator. … I am grateful. I have come to see that there is good in every situation, sometimes we just have to look for it.  I pray each day that … you have felt a certain closeness and surrender to God as well and have formed a bond of love and support amongst one another. … Know that I am fighting from my side in the ways I am able and I have a lot of fight left inside of me.  I am not breaking down and I will not give in no matter how long it takes."
- Kayla Jean Mueller in a letter to her parents while in ISIS captivity.

"I have become a spiritual person.  I pray 2-3 times a day, mostly on your behalf.  I have considered converting to Islam because it surrounds me, yet I promised myself back in August to embrace our family's heritage when I come home.  Plus, it would dishonor the experience of grandma and grandpa. [Holocaust survivors.] … I hope this experience has also increased your faith. … Everyone has two lives: the second one begins when you realize you only have one."
- Steven Joel Sotloff in a letter to his parents while in ISIS captivity.

"If I do die, I figure that at least you and I can seek refuge and comfort in knowing that I went out as a result of trying to alleviate suffering and helping those in need. … What is important is that the dedication to aggressively striving to alleviate true suffering remains the essence of SERA [Special Emergency Response and Assistance]. … Just know I'm with you, every stream, every lake, every field and river, in the woods and in the hills, in all the places you showed me.  I love you.
- Peter Edward Kassig in a letter to his parents while in ISIS captivity.

I.      **INTRODUCTION**

The Islamic State (or "ISIS") did not have the final word in this prosecution. Instead, the final words rightly belong to the remarkable victims in this case who were subjected to a prolonged pattern of physical and psychological violence at the hands of this defendant, along with El Shafee Elsheikh and Mohammad Emwazi. *See* Dkt. No. 292-1 PSR ¶58. The murders of four Americans in this hostage-taking scheme, in addition to the murders of two British citizens and two Japanese citizens among others, demonstrated the utter depravity of the defendant's co-conspirators, the defendant himself, and the lethal terrorist organization he chose to join. It is for these reasons that this defendant will be sentenced to a mandatory life term of imprisonment in a court of law in the United States. Notwithstanding the mandatory life term required by statute on the first five counts, a life term is also a reasonable and appropriate punishment on the remaining three counts, justified by the aggravated circumstances of the defendant's conduct and consistent with the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

The conduct of the defendant established by this prosecution amply demonstrates the existential threat the Islamic State posed to the West between 2013 to 2018. The coordinated and purposeful effort by ISIS to distribute violent propaganda through its social media ecosystem revolutionized terrorism recruitment by falsely glorifying the rationale of the Islamic State. The public should not be misled to understand that the conduct of the defendant or any other member of the Islamic State was rooted in warfare or other geopolitical conflict. Indeed, the defendant's own words demonstrates the moral bankruptcy of this ISIS propaganda:

> Interviewer: When it comes to the acts of Mohammed Emwazi who we know, because we've seen in videos, beheading western journalists like James Foley. Do you denounce that?
> …

> <u>Alexanda Kotey</u>: It's the whole issue of collateral damage. Goes back to, how you, I guess how you see things. How's your perception of war. In war … the issue of collateral damage. In basically achieving your goal, your objective, is it acceptable to take the life of an innocent person.

*See United States v. Elsheikh*, 1:20-cr-239 (Govt. Exs. 27-5 & 27-5a). Rather, the defendant and the leadership and foot solders of the Islamic State all engaged in a pattern of grotesque violent criminal activity. The Islamic State engaged in this gratuitous violence unabashedly and with purpose, adopting the mantra of "stop hearing about us, start hearing from us."

The graceful and courageous words of the murdered victims – Mr. Foley, Ms. Mueller, Mr. Sotloff, and Mr. Kassig – speak to their personal values and their common commitment to address the suffering of innocent people in one of the most dangerous parts of the world. The victims' heroic, selfless and peaceful commitment to others and the pursuit of truth are reasons why their murders are so intensely felt by their families, their community, and the world at large. The victims' personal values also fit comfortably with the virtues of the genuinely unique American system of criminal justice that was on full display in this prosecution, *i.e.*, the primacy of the rule of law, due process and reason.

The pursuit of justice in American courts does not seek vengeance – it seeks the truth. This prosecution reaffirmed the sad eternal truth that there is a dark side to human nature. But the legacy of this prosecution will be the strength, dignity and moral courage of the victims in this case. This prosecution also echoes the enduring words of Justice Robert H. Jackson: "[That we] stay the hand of vengeance and voluntarily submit [the defendant] to the judgment of the law is one of the most significant tributes that Power has ever paid to Reason." *See* Robert H. Jackson Center at <u>https://www.roberthjackson.org/</u>.

3

## II. SENTENCING GUIDELINES AND SENTENCING LAW

1. <u>Guidelines</u>

The Probation Officer has determined that the defendant's total offense level is 43, his criminal history category is VI, and the advisory Guidelines range is Life imprisonment. PSR at ¶ 133. Offense level 43 is reached by applying application note two from Chapter 5 Part A of the U.S.S.G. The government has no reason to dispute this Guidelines policy determination. However, the government notes the stipulation of the parties to the following offense level guidelines calculation in the plea agreement in this matter:

| Guideline | Description | Offense Level |
|---|---|---|
| U.S.S.G. §2A4.1(a) | Base Offense Level: Kidnapping, Abduction, Unlawful Restraint | 32 |
| U.S.S.G. §2A4.1(b)(1) | Ransom demand or demand upon a government | +6 |
| U.S.S.G. §2A4.1(b)(2)(A) | Permanent or life-threatening bodily injury | +4 |
| U.S.S.G. §2A4.1(b)(3) | A dangerous weapon was used | +2 |
| U.S.S.G. §2A4.1(b)(4)(A) | Victim not released before 30 days elapsed | +2 |
| U.S.S.G. §3A1.4 | Terrorism | +12 |
| U.S.S.G. §3B1.1(a) | Aggravating Role | +4 |
| | Total Offense Level | 62 |

*See* Dkt. No. 204 at ¶ 5.

The final stipulated Guidelines calculation is properly calculated at offense level 59, criminal history category VI, after the defendant's three-level reduction for acceptance of responsibility is applied. The Guidelines recommend a life term of imprisonment. The government also asks the Court to fulfil other procedural sentencing requirements, including ordering payment of the $800.00 special assessment pursuant to 18 U.S.C. § 3013. The government agrees that the sentences imposed on all eight counts may be served concurrently.

2. <u>Sentencing Law</u>

The convictions on Counts 1-5 in this matter require a mandatory minimum term of life imprisonment for each count. *See* 18 U.S.C. § 1203. Notwithstanding the mandatory life term of imprisonment on five counts in this case, the procedural steps governing sentencing must be addressed, particularly as to the remaining three counts, which carry sentencing ranges including any term of years or life. *See* 18 U.S.C. §§ 2332, 2339A, 2339B. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the United States Sentencing Commission, Guidelines Manual ("U.S.S.G." or the "Guidelines") purely advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264; *see also United States v. Kimbrough*, 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence") In *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 596-97. In addition, the Fourth Circuit requires that district courts provide an individualized explanation of reasons for their sentence, including any deviation from the recommended Guidelines sentence, as well as address any non-frivolous argument in favor of a particular sentence. *See, e.g.*, *United States v. Provence*, 944 F.3d 213, 218 (4th Cir. 2019). But of course, less explanation is needed when imposing a Guidelines sentence because the circumstances make clear the court is relying on the Commission's own reasoning in the Guidelines themselves. *See, e.g.*, *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1964 (2018).

### III. A LIFE TERM OF IMPRISONMENT IS MANDATED BY LAW AND SUPPORTED BY THE STATUTORY SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(a).

Substantive sentencing requires the Court to consider the relevant 3553(a) factors, which include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct; and the kinds of sentences and sentencing range established by the Guidelines. The Court is required to impose a sentence sufficient, but not greater than necessary, to achieve the purposes of the statutory sentencing scheme. A life term of imprisonment satisfies the balance sought by the statute to impose a sufficient punishment, recognizing the societal harm caused by the defendant's conduct, without imposing a sentence that is excessive.

The serious nature of the defendant's offenses cannot be overstated.[1] The ruthless and chilling conduct that this defendant and his co-conspirators engaged in are among the worst crimes that can ever be committed, and among the most horrific that any person could ever be forced to endure. Throughout the inhumane captivity of the American, British, European, and Japanese hostages, the defendant, Elsheikh, and Emwazi supervised jails and detention facilities holding the hostages. They were collectively responsible for transferring hostages between detention facilities and engaging in a prolonged pattern of physical and psychological violence against the hostages. The defendant later explained the violence as an effort at "controlling" the hostages.

---

[1] Although the Court is entitled to rely solely on the unobjected-to facts alleged in PSR (Fed. R. Crim. P. 32(i)(3)(A)), the Court is also permitted to consider evidence adduced at the trial of co-defendant El Shafee Elsheikh to the extent that the PSR provided adequate notice of and an opportunity to object to the facts supported by that evidence. *See, e.g., United States v. Swisher*, 560 F. App'x 177, 178 (4th Cir. 2014).

Furthermore, in or about February 2014, a Russian hostage who was held with the American, British and European hostages was removed from the hostages' cell.  Shortly after, the defendant and his co-conspirators showed pictures of the Russian hostage to the other hostages on a laptop computer.  The image that the defendant and his co-conspirators showed to the Western hostages depicted the Russian with a fatal gunshot wound to the head.  The Russian hostage had been murdered.  The photograph of the Russian hostage was emailed to the family of at least one of the European hostages as part of the hostage negotiations. The threats made by the defendant and his co-conspirators to harm remaining hostages caused even the released hostages continuing psychological torment and harm.

Additionally, in or about April 2014, the defendant, Elsheikh and Emwazi forcibly moved the Italian, Danish, and German citizens, along with two other European humanitarian aid workers, to an isolated area approximately two miles from their prison near Raqqa, Syria, to witness the execution of a Syrian prisoner whom they described as an Islamic State "spy."  The defendant and Emwazi coordinated the scene before the Syrian prisoner was executed.  Elsheikh videotaped the execution of the Syrian hostage, who could be seen falling into a pit in front of the five European hostages who held hand-written messages pleading for their lives and urging their governments to pay large sums of money for their release.  The video of this execution and images of the European hostages holding the hand-written messages were emailed to the families of the European hostages as part of the negotiations.

The defendant's thirst for extreme violence and depravity, and the lack of any significant mitigating factors regarding his inexplicable decision to engage in this brutal hostage-taking conspiracy that led to numerous deaths, clearly demonstrates that he deserves a life term of imprisonment from this Court.

## IV. CONCLUSION

A life sentence reflects the seriousness of the offenses and provides a just sentence. 18 U.S.C. § 3553(a)(2)(A).  For the foregoing reasons, the government believes that a life term of imprisonment on each of the eight offenses of conviction is sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:       /s/
Dennis M. Fitzpatrick
Raj Parekh, First Assistant U.S. Attorney
John T. Gibbs
Aidan Taft Grano-Mickelsen
Assistant United States Attorneys
Eastern District of Virginia
Alicia Cook, Trial Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record in this matter.

By:       /s/
Dennis M. Fitzpatrick
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700